**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SEADRILL LIMITED, *et al.*,[1] | ) | Case No. 21-30427 (DRJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SEADRILL PARTNERS LLC, *et al.*,[2] | ) | Case No. 20-35740 (DRJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Re: Docket No. 566** |

**ORDER APPROVING (I) THE SETTLEMENT
BETWEEN THE SEADRILL LIMITED DEBTORS AND THE SEADRILL
PARTNERS DEBTORS AND (II) THE SDLP DEBTORS' SUPPLEMENTAL
NOTICE WITH RESPECT TO THEIR PLAN AND DISCLOSURE STATEMENT**

Upon the motion (the "Motion")[3] of the above-captioned Seadrill Limited debtors and

debtors in possession (collectively, "Seadrill Limited" or the "Seadrill Limited Debtors") and

Seadrill Partners LLC debtors (collectively, "SDLP" or the "SDLP Debtors," and, together with

the Seadrill Limited Debtors, the "Debtors") for entry of an order (this "Settlement Order"), (a)

approving a settlement (the "Settlement") by and among the Seadrill Limited Debtors and the

---

[1]  A complete list of each of the Seadrill Limited Debtors in these chapter 11 cases may be obtained on the website of the Seadrill Limited Debtors' claims and noticing agent at http://cases.primeclerk.com/SeadrillLimited.  The location of Seadrill Limited Debtor Seadrill Americas, Inc.'s principal place of business and the Seadrill Limited Debtors' service address in these chapter 11 cases is 11025 Equity Drive, Suite 150, Houston, Texas 77041.

[2]  A complete list of each of the SDLP Debtors in these chapter 11 cases may be obtained on the website of the SDLP Debtors' claims and noticing agent at https://cases.primeclerk.com/seadrillpartners.  The location of SDLP Debtor Seadrill Partners LLC's principal place of business and the SDLP Debtors' service address in these chapter 11 cases is Seadrill Partners LLC, 2nd Floor, Building 11, Chiswick Business Park, 566 Chiswick High Road, London W4 5YS, United Kingdom.

[3]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

SDLP Debtors (together, the "Parties") substantially on the terms set forth in the term sheet (the "Term Sheet") attached hereto as **Exhibit A**, (b) authorizing the Parties to perform any and all obligations contemplated by the Settlement, (c) modifying the MSAs during the Transition Period to reflect the terms of the Settlement, (d) terminating the MSAs at the conclusion of the Transition Period, (e) approving the adequacy of and the form and manner of notice of the Modified Combined Hearing Notice, substantially in the form attached hereto as **Exhibit B**; and (f) granting related relief, all as more fully set forth in the Motion; and this Court having subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334; this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' respective estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

**IT IS HEREBY FOUND AND CONCLUDED THAT:**

1.      The Motion is granted to the extent set forth in this Settlement Order.

2.      The Settlement is a good-faith compromise and settlement of claims, interests, causes of action, and controversies among the Parties.  Such compromise and settlement is the product of extensive arm's-length, good faith negotiations that resulted in the Settlement, which represents a fair and reasonable compromise of all claims, interests, and controversies, and entry into which represented a sound exercise of the Debtors' respective business judgment.  Such compromise and settlement is fair, equitable, reasonable, and in the best interests of the respective Debtors and their estates.

3.      Each of the Parties is authorized to enter into the Settlement.  The Parties are authorized to enter into, perform, execute, and deliver all documents, and take all actions, necessary to fully implement the Settlement in accordance with the terms, conditions, and agreements set forth in the Term Sheet attached hereto as **Exhibit A**, all of which are hereby approved; provided, however, that in the event of any inconsistency between the Term Sheet and this Settlement Order, this Settlement Order shall control.

4.      The MSAs are hereby deemed amended and restated consistent with the Term Sheet from the date hereof through and until the conclusion of the Transition Period, which will be the longer of (a) June 30, 2021, so long as Seadrill Limited has made reasonable efforts to plan and complete the transition by such date; *provided* that failure of SDLP or its new MSA operators to make reasonable efforts to plan and complete the transition by such date shall not obligate Seadrill Limited to provide transition services beyond such date; or (b) a date that is otherwise mutually agreed between SDLP, Seadrill Limited, and the TLB Lenders.  Upon conclusion of the Transition Period, the MSAs are hereby deemed terminated.  For the avoidance of doubt, no fees or payments under the MSAs or otherwise, other than those set forth in this Settlement Order and the Term Sheet, shall be due to Seadrill Limited.

5.      Seadrill Limited shall provide restructuring and transition services to SDLP, within the scope set forth on **Exhibit A** to the Term Sheet through June 30, 2021 in exchange for a total fee of $3,000,000, which fees shall be paid by SDLP in accordance with the terms and on the timing set forth in **Exhibit A**.

6.      The SDLP Debtors are authorized and directed to pay Seadrill Limited a total fixed amount of $11,250,000 within three (3) business days of the date of entry of this Order and operating fees of $25,000 per day for each of the West Vela and West Capella rigs, effective May 1, 2021, through the date that any third party MSA provider is then in control of any respective rig.

7.      The SDLP Debtors are authorized and directed to fund $9 million in cash into a separate, segregated SDLP bank account to be used for the sole purpose of securing payments under this Settlement (the "Segregated Account") within three (3) business days of the date of entry of this Settlement Order.  Other than with respect to payments contemplated by the Settlement, SDLP will not remove cash from the Segregated Account. The cash in the Segregated Account is deemed free and clear of all preexisting liens, claims, and encumbrances.

8.      Seadrill Limited is deemed to have a first priority lien on the Segregated Account to secure amounts owing under the Settlement.

9.      For the avoidance of doubt, SDLP is authorized pursuant to Section 363(c) of the Bankruptcy Code to make all payments to Seadrill Limited contemplated by this Settlement Order, notwithstanding Section 1 of the Stipulation or any other provision of the interim cash collateral order (as amended on April 12, 2021) [Case No. 20-35740, Docket No. 485] (the "Interim Cash Collateral Order") or the Stipulation to the contrary.  For the avoidance of doubt, SDLP is authorized to make payments to third parties to carry out the exchange of capital spares as set forth

in the Term Sheet, and nothing herein shall modify SDLP's authority to make payments under or otherwise limit the *Final Order (I) Authorizing the Payment of Specified Operational Claims, (II) Confirming Administrative Expense Priority of Outstanding Purchase Orders, and (III) Granting Related Relief* [Case No. 20-35740, Docket No. 103].  In the event of a conflict between the Interim Cash Collateral Order, the Stipulation, and this Settlement Order, the terms of this Settlement Order will control.

10.     All payments contemplated by this Settlement Order are deemed to have administrative priority of the kind specified in sections 503(b) and 507(a) of the Bankruptcy Code against the SDLP Debtors.

11.     For good and valuable consideration, effective upon entry of this Settlement Order, (a) each Seadrill Limited Debtor, (b) each Related Party[4] of each entity in clause (a) through the following clause (c), and (c) each current and former Affiliate[5] of each entity in clause (a) through this clause (c), solely in their capacity as such, is deemed released and discharged by the SDLP Debtors from any and all claims or causes of action, including any derivative claims asserted or capable of being asserted on behalf of the SDLP Debtors, or which any of the SDLP Debtors would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the holder of any claim against, or interest in, the SDLP Debtors, based on or relating to, or in any manner arising from, in whole or in part, the SDLP Debtors, the SDLP Debtors' in- or out-of-court restructuring efforts, the Seadrill MSAs, intercompany transactions between or among

---

[4]   "*Related Party*" means each of, solely in their capacity as such, current and former directors, officers, managers, Affiliates, affiliated investment funds or investment vehicles, investment advisors, collateral managers, predecessors, successors, assigns, subsidiaries, shareholders, unitholders, equity holders, partners, limited partners, general partners, principals, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

[5]   "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code. With respect to any entity that is not a Debtor, the term "Affiliate" shall apply to such entity as if the entity were a Debtor.

the SDLP Debtors and the Seadrill Limited Debtors, the SDLP Debtors' chapter 11 cases, the filing of the SDLP Debtors' chapter 11 cases, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before entry of this Settlement Order. Notwithstanding the foregoing, this paragraph shall not (x) release the Parties' obligations under the Settlement or (y) release any entity that timely opts out of the releases in the SDLP Debtors' plan of reorganization and, for the avoidance of doubt, retroactive to the date of entry of this Settlement Order, the release set forth in this paragraph 11 shall not be effective as to any party that so opts out, without further court order or notice to any party required.

12.     For good and valuable consideration, effective upon entry of this Settlement Order, (a) each SDLP Debtor, (b) each Related Party of each entity in clause (a) through the following clause (c), and (c) each current and former Affiliate of each entity in clause (a) through this clause (c), solely in their capacity as such, is deemed released and discharged by the Seadrill Limited Debtors from any and all claims or causes of action, including any derivative claims asserted or capable of being asserted on behalf of the Seadrill Limited Debtors, or which any of the Seadrill Limited Debtors would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the holder of any claim against, or interest in, the Seadrill Limited Debtors, based on or relating to, or in any manner arising from, in whole or in part, the SDLP Debtors, the SDLP Debtors' in- or out-of-court restructuring efforts, the Seadrill MSAs, intercompany transactions between or among the SDLP Debtors and the Seadrill Limited Debtors, the SDLP Debtors' chapter 11 cases, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before entry of this Settlement Order. Notwithstanding the foregoing, this paragraph shall not (x) release the Parties' obligations under the Settlement or (y) release any entity that timely opts out of the releases in the SDLP Debtors'

plan of reorganization and, for the avoidance of doubt, retroactive to the date of entry of this Settlement Order, the release set forth in this paragraph 12 shall not be effective as to any party that so opts out, without further court order or notice to any party required.

13.    Notwithstanding anything to the contrary in the Term Sheet, the SDLP Debtors' obligation to support the Seadrill Limited Debtors' chapter 11 plan and the Seadrill Limited Debtors' obligation to support the SDLP Debtors' chapter 11 plan (a) shall be limited to commercially reasonable efforts and (b) shall apply only to chapter 11 plans that do not impose obligations, other than with respect to the Settlement, on SDLP or Seadrill Limited, as applicable.

14.    The automatic stay under section 362(a) of the Bankruptcy Code is hereby modified with respect to each Debtor as necessary to effectuate all of the terms and provisions of this Settlement Order and the Settlement.

15.    This Settlement Order and the terms of the Settlement shall be binding on the Parties, the Debtors' respective estates, all creditors and parties-in-interest, and any trustee appointed in these cases.  In the event of a conflict between the Term Sheet and this Settlement Order, the terms of this Settlement Order will control.

16.    Nothing in this Order shall affect any party's (except for the Seadrill, Ltd. debtors) rights to object to final approval of the Disclosure Statement or confirmation of the Debtor's proposed plan. For the avoidance of doubt, the SDLP UCC's Challenge Period and

related rights under the Interim Cash Collateral Order are expressly reserved, including but not limited to rights (if any) in any equipment and capital spares being transferred pursuant to the Settlement.

17.     Together with the SDLP Disclosure Statement, the Modified Combined Hearing Notice, substantially in the form attached hereto as **Exhibit B**, complies with the requirements of Bankruptcy Rules 2002(b), 2002(d), and 3017(d) and is approved.   The Modified Combined Hearing Notice shall be filed by the SDLP Debtors and served upon all parties required pursuant to Bankruptcy Rule 2002.   The mailing of the Modified Combined Hearing Notice, is deemed to be sufficient and appropriate under the circumstances, and is deemed to provide adequate notice of the changes reflected in the SDLP Third Amended Plan as a result of the Settlement.

18.     The Plan Confirmation Schedule (as defined in the SDLP Disclosure Statement Order) is amended and restated in its entirety as set forth below:

| Event | Date |
|---|---|
| Voting Record Date | March 22, 2021 |
| Solicitation Deadline | March 26, 2021 |
| Publication Deadline | March 29, 2021 |
| Plan Supplement Date | April 30, 2021 |
| Cure Objection Deadline | May 7, 2021 at 4:00 p.m. (prevailing Central Time) |
| Voting Deadline | May 7, 2021 at 11:59 p.m. (prevailing Central Time) |
| Plan and Disclosure Statement Objection Deadline | May 7, 2021, at 4:00 p.m. (prevailing Central Time) |
| Deadline to File Voting Report | May 13, 2021, at 4:00 p.m. (prevailing Central Time) |
| Deadline to File Confirmation Brief and/or Omnibus Reply to Any Plan or | May 13, 2021 |

| Event | Date |
|---|---|
| Disclosure Statement Objection | |
| Combined Hearing on Disclosure Statement and Plan | May 14, 2021, at 1:00 p.m. (prevailing Central Time) |

19.     Notice of the Motion as provided therein shall be deemed good and sufficient notice and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

20.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Settlement Order are immediately effective and enforceable upon its entry.

21.     The Parties are authorized to take all actions necessary to effectuate the relief granted in this Settlement Order.

22.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Settlement Order to the maximum extent allowed by law under the applicable circumstances.

Signed:  April 15, 2021.

DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

## Exhibit A

**Term Sheet**

SEADRILL MSA SETTLEMENT TERM SHEET

This binding settlement term sheet (this "**Term Sheet**")[1] describes the terms of a settlement (the "**Settlement**") between Seadrill Limited and SDLP (each as defined below) to be implemented pursuant to a joint settlement motion in the Chapter 11 Cases with the support of the Parties.

| | |
|---|---|
| **Required Parties to the Settlement** | The following are parties to the Settlement (the "**Parties**"): |
| | "**SDLP**":  Seadrill Partners, LLC, and each of its direct and indirect debtor and non-debtor subsidiaries and affiliates; and |
| | "**Seadrill Limited**":  Seadrill Limited and Seadrill Management Ltd. collectively with each of its debtor and non-debtor subsidiaries that provide services to SDLP under that certain Amended and Restated Management and Administrative Services Agreement, dated as of September 11, 2017, and all related agreements, and certain ancillary agreements (collectively, the "**MSA**"). |
| **The Chapter 11 Cases** | Each of the SDLP and Seadrill Limited debtors have chapter 11 cases (the "**Chapter 11 Cases**") pending before the United States District Court for the Southern District of Texas (the "**Bankruptcy Court**"), respectively jointly administered under case number 20-35740 (DRJ) and case number 21-30427 (DRJ). |
| **Settlement Summary** | This Term Sheet describes the terms of a global settlement between SDLP and Seadrill Limited, under which there will be a comprehensive resolution of all disputes and claims and causes of action regarding prepetition claims between SDLP and Seadrill Limited, postpetition charges under the management and administrative services agreements between the Parties, and provisions for go-forward transition services, each pursuant to a final order of the Bankruptcy Court.  The Settlement shall become effective upon entry of the final order of the Bankruptcy Court approving the Settlement (such date, the "**Effective Date**" and, such order, the "**Settlement Order**").  The Settlement Order shall, among other things, deem all payments due under the Settlement to be administrative claims against SDLP as defined in the Bankruptcy Code. |
| | The terms of the Settlement are reflected in this Term Sheet, each Plan, the joint motion to approve the Settlement, and the order granting the motion (which shall be in form and substance reasonably acceptable to the Parties, the "**Definitive Documents**").  The Definitive Documents shall satisfy the requirements of the Bankruptcy Code and be consistent with this Term Sheet. |
| **MSA Payments** | **Fixed Fees:**  Within three business days of the Effective Date, SDLP will pay Seadrill Limited a total fixed fee of $11,250,000 on account of management services provided, consisting of $2,250,000 per month from December 1, 2020 through April 30, 2021.   The Fixed Fees cover all rigs, regardless of operating status, and is to be paid within three business days of Bankruptcy Court approval of the Settlement. |
| | The Fixed Fees include access to the capital-spares pool through April 30, 2021. |
| | **Operating Fees:**  Seadrill Limited commits to seeking customer approval to transition the West Vela and West Capella rigs to the applicable MSA providers prior to drilling contract completion date and work in good faith to achieve a safe and efficient transition if customer consent is received. SDLP will pay Seadrill Limited operating fees of $25,000 per day for each of those rigs, effective May 1, 2021, through the date that any third party MSA provider is then in control of any respective rig.  For the avoidance of doubt, such fees are to be paid monthly in arrears within three days of month or contract end or of successful transition to a new MSA provider. |

---

[1]  Unless otherwise noted, capitalized terms used and not immediately defined herein shall have the meanings ascribed to them at a later point in this Term Sheet.

| | |
|---|---|
| | This fee includes access to the capital spares pool through successful transition of the SDLP rigs to their new MSA providers. |
| **Pass-Through Costs and Segregated Account** | Outstanding amounts for direct-pass through costs paid by Seadrill Limited from December 2020 onward will be paid by SDLP to Seadrill Limited in accordance with this Term Sheet, subject to verification and adjustment as described below.<br><br>SDLP will pay Seadrill Limited for unpaid pass-through costs accrued in December 2020, January 2021, and February 2021, in the amount of $6,479,265, within 3 business days after the Effective Date.  Any confirmation or verification of this amount required by SDLP shall have occurred prior to the Effective Date.<br><br>SDLP will pay Seadrill Limited for ongoing monthly pass-through costs on a monthly basis in arrears, within three (3) business days of presentation of invoice for verification by SDLP, which invoice shall include detailed support of the charges to allow for verification of the amounts owed, and including, for the avoidance of doubt, those amounts accrued in March 2021. All payments of direct pass-through costs are subject to retrospective adjustment to the extent errors or true-ups are discovered after payment is made.<br><br>Any severance and termination liabilities included as pass-through costs will be subject to same verification process as direct pass-through costs and will only be paid for employees (i) from whom SDLP is responsible for payment of wages as pass through costs and (ii) that are terminated and not otherwise rehired by SDLP or Seadrill Limited.<br><br>Within 3 business days of the Effective Date, SDLP will fund $9 million in cash, which is equal to an estimated 60 days of payments (based on historical payments, estimated and agreed among the Parties prior to the Effective Date) due to Seadrill Limited under this Settlement into a separate, segregated SDLP bank account to be used for the sole purpose of securing payments under this Settlement (the "**Segregated Account**").  The balance of the Segregated Account shall remain at or above the initial funding amount until services being provided to SDLP by Seadrill Limited under the terms of this Settlement are fully paid for. The Settlement Order will deem the cash in the Segregated Account free and clear of all preexisting liens, claims, and encumbrances and will grant Seadrill Limited a first priority lien on the Segregated Account to secure amounts owing under the Settlement.   Other than with respect to payments contemplated by the Settlement, SDLP will not remove cash from the Segregated Account.  Upon a payment default under the Settlement, Seadrill Limited may file a motion with the Bankruptcy Court for entry of an order permitting Seadrill Limited to exercise remedies against the account.  Such motion may be filed on an emergency basis, and no Party shall oppose the timing of such relief. |
| **Restructuring Services and Transition Fees** | Seadrill Limited shall provide restructuring and transition services to SDLP, within the scope set forth on **Exhibit 1** to this Term Sheet, through June 30, 2021.<br><br>SDLP shall directly pay restructuring and transition fees to Seadrill Limited in a total amount of $3,000,000, inclusive of: |

<table>
<tr><td></td><td>

- A restructuring services fee of $750,000 for the period December 2020 through June 2021 (the "**Restructuring Services Fee**")[2].

  - Restructuring Services Fees of $420,000 for December 2020 through March 2021 will be paid within three business days after the Effective Date.

  - Restructuring Fees of $110,000 per month for April 2021, May 2021, and June 2021 to be paid monthly in arrears within three business days of the end of applicable month.

  - Seadrill Limited shall not be obligated to provide restructuring services after June 30, 2021.  Seadrill Limited and SDLP shall negotiate in good faith around scope and compensation for any required restructuring services beyond June 30, 2021 if and when the need arises.

- A fee of $2,250,000 (the "**Transition Support Fee**") payable in three parts and prorated equally on a per-rig basis, with the initial payment of 33% within three days of the Effective Date, 33% within 60 days of the Effective Date, and 33% no later than June 30, 2021; provided, however that the final 33% for the West Vela and West Capella rigs will be paid on the earlier of (i) turnover or (ii) sixty (60) days after the end of the operating period (as applicable to each rig).

  - Seadrill Limited shall not be obligated to provide transition services after June 30, 2021, so long as Seadrill Limited has made reasonable efforts to plan and complete the transition by such date.  The failure of SDLP or its new MSA operators to make reasonable efforts to plan and complete the transition by such date shall not obligate Seadrill Limited to provide transition services beyond such date.

  - The third installment of the Transition Support Fee will become payable provided Seadrill Limited has made reasonable efforts to plan and complete the transition of all services as set forth in **Exhibit 1** to this Term Sheet.  The failure of SDLP or its new MSA operators to make reasonable efforts to plan and complete the transition shall not relieve SDLP of the obligation to timely pay the third installment of the Transition Support Fee.

  - Transition of the West Vela and West Capella rigs will be deemed complete at the earlier of either the date of successful transition or 60 days after end of the operating period (as applicable to each rig), subject to reasonable efforts by all Parties (including the new MSA providers) to complete the transition.

- Any services within the contemplated scope of services (as set forth as **Exhibit 1** to this Term Sheet) are to be covered by the Transition Support and Restructuring Services Fees whether performed by Seadrill Limited or a third party.  If further SDLP requests outside the agreed scope require the use of third party providers, these costs are to be paid by SDLP, provided that SDLP will have the right to review and approve entering into any third party arrangements in advance. SDLP is engaging a third-party, at its own cost, to assist in the transition and associated project management.

</td></tr>
<tr><td>**Marketing**</td><td>Seadrill Limited will cease to be obliged to market the SDLP vessels immediately. Seadrill Limited will not provide or transition any open tenders. In the event any specific formal tenders</td></tr>
</table>

---

[2] For the avoidance of doubt, amounts provided for in this Term Sheet are exclusive of any applicable Value Added Taxes ("**VAT**").

|  | outstanding where only a SDLP unit was participating (i.e., no Seadrill Limited unit offered), it shall be discussed between Seadrill Limited and SDLP. |
|---|---|
| **Capital Spares** | All rig-based equipment stays on the rig on which it currently sits and ownership of the equipment on SDLP rigs shall be transferred to the applicable SDLP rig. Transfer of title of all assets / components which have been subject to like for like exchange between Seadrill Limited and SDLP to take place.<br><br>Assets / components that are presently in repair and were the subject of a like-for-like exchange to be provided to exchange counterparty in repaired/refurbished condition (i.e., the like-for-like exchange shall be completed) and title shall transfer. All like-for-like exchanges to be verified through appropriate documentation and support evidencing such exchange and location of component / part.<br><br>Access to be provided to SDLP for all SDLP parts / components in storage at a Seadrill Limited facility or third party facility Items to be removed from Seadrill Limited facilities by SDLP at SDLP's cost no later than June 30, 2021 or, with respect to the West Vela and West Capella, two months after the earlier of contract end or successful transition of rigs to new MSA providers. Items to be removed from third party facilities subject to discussions with the third party. In the event SDLP is unable to collect the equipment or agree alternative arrangements within two months of the transition date absent any other agreement, the title reverts to Seadrill Limited. |
| **Releases** | The order attached to the joint settlement motion will contain full mutual debtor releases of all claims and causes of action, other than the Parties' obligations under the Settlement, by (a) SDLP in favor of Seadrill Limited and its affiliates, related parties, and, for the avoidance of doubt, current and former directors and officers and (b) Seadrill Limited in favor of SDLP and its affiliates, related parties, and, for the avoidance of doubt, current and former directors and officers. |
| **Plan and Disclosure Statement** | Each of SDLP's and Seadrill Limited's chapter 11 plans of reorganization (each, a "**Plan**") will confirm the full mutual debtor releases and include third-party releases of all claims and causes of action against SDLP and Seadrill Limited and each of their respective affiliates, related parties, and, for the avoidance of doubt, current and former directors and officers, other than the Parties' obligations under the Settlement.<br><br>Within three business days after the Effective Date, SDLP shall file an amended Plan consistent with the terms of this Settlement, substantially in the form attached hereto as **Exhibit 2**, and cause to be served a supplemental confirmation and disclosure statement hearing notice and updated opt out notice on all applicable parties.<br><br>Each of the Parties will support SDLP and Seadrill Limited in connection with their respective restructurings and confirmation of a chapter 11 plan of reorganization in each other's chapter 11 cases and will not object to confirmation of the other's Plan, except to the extent inconsistent with this Settlement.  Each of the Parties shall not opt out of the releases in either Plan. |
| **Other Claims** | Without limiting the releases set forth above, Seadrill Limited shall waive all claims it may hold with respect to the SDLP estates, whether administrative, general unsecured, or otherwise, including, for the avoidance of doubt, any lien claims under Louisiana law.<br><br>Without limiting the releases set forth above, SDLP shall waive all claims against Seadrill Limited's estates, including, for the avoidance of doubt, those related to the $19.4 million cash sweep from November 2020. |

## **Exhibit 1**

Scope of Transition Services

# Exhibit 1

Transition and Restructuring Services required by SDLP from Seadrill Limited

| Item | Description |
|------|-------------|
| General | • Transition and Restructuring Support fees to be paid to Seadrill Limited for support through June 30, 2021, provided all parties make reasonable efforts (including new MSA providers) to plan and complete the transition by such time. With respect to the West Vela and West Capella such transition support to be provided by Seadrill Limited will be to the date of successful transition or 60 days after end of the operating period, again subject to reasonable efforts by all parties.<br>• Idle rigs to be transferred to managers as soon as manager ready; operating rigs to be transferred upon earlier of (i) customer consent to transfer and (ii) termination of customer contract, with the operating rigs operated in the ordinary course by Seadrill Limited to such point.<br>• Books and records related to the 2020 period, including up to February 28, 2021, to be transitioned by April 30, 2021. Books and records related to all prior years to be provided as soon as reasonably possible, but no later than May 31, 2021.<br>• For the avoidance of doubt, consolidation and financial reporting, tax compliance, treasury and cash management and accounts receivable and accounts payable services (including payroll) to be provided to June 30, 2021, including such consolidation and financial reporting through that date. Seadrill Limited will not be required to consolidate or support the accounting of transactions originating with new MSA providers.<br>• Seadrill Limited to work in good faith to extract and provide data requested in an available format as reasonably requested by SDLP. For the avoidance of doubt, Seadrill Limited will not be responsible for bridging Seadrill Limited systems to new MSA providers systems.<br>• Seadrill Limited do not intend to novate any Seadrill Limited MSAs or contracts.<br>• Seadrill Limited to provide procedures and documents which are solely attributable to the SDLP rigs. Data/information which has been developed by Seadrill Limited and relates to fleet wide procedures and classified as proprietary will not be shared. |
| Data | • For each SDLP rig:<br>  o All rig-specific maintenance, operating, regulatory (class, flag, licensing, etc.), inventory and purchasing data<br>  o Historical operating data for both operating and idle rigs, to be transferred no later than May 31, 2021<br>  o All purchasing data related to SDLP units, regardless of whether data under and SDLP or Seadrill Limited MSA, to be provided<br>  o Transferred data to include, but not be limited to:<br>    ▪ IT Hardware: Satellite Antennas, Router, Switches, Access Points, Phones, Servers, Storage, Desktops, etc.<br>    ▪ IT Software transition: RimDrill, Synergy, Maximo, etc.<br>    ▪ Performance data which includes, but is not limited to, QHSE, Drill pipe RIH/ROh, Riser Running/Pulling, BOP testing times, etc.<br>    ▪ Details of set-up of MPD, including manuals, drawings, etc. (where applicable)<br>    ▪ Rig importation and customs records<br>  o All fixed asset registers and full capital spares listing; transfer logs to be transferred if gap in fixed asset register/inventory take<br>  o All data related to in-process purchase orders, including materials received at freight forwarders, materials in transit and materials physically on rigs but not yet received into inventory |

|  | <ul><li>▪ All SDLP purchasing data to be provided, regardless of MSA under which data falls</li><li>○ All OEM, vendor service, ship-care and other service provider (i.e., catering) agreements in place</li><li>○ Rig Condition Assessments, Preservation Plans, Reactivation Plans, Special Periodic Survey Plans, Upgrade Plans, etc.</li><li>○ All data related to SDLP's direct-hire personnel adhering to regulations</li><li>• All legal-entity historical accounting, tax, treasury, legal, governance and compliance data</li><li>○ All legal, governance, treasury e.g., loan agreements since inception to be provided</li><li>○ All general ledger, subledger, trial balance, balance sheet and income statement data since 2012 to be provided including walk through of closing balance sheets and income statement from January 1, 2021</li><li>○ All data related to FY2020 and FY2021 (from January 1, 2021 to the handover date), open tax or financial audits, including invoices, journals and support for journals to be provided</li><li>○ Invoice level detail for prior periods to be provided on a targeted basis as agreed between the parties</li><li>○ Should a regulatory audit occur post transition, Seadrill Limited will support data requests back to 2013</li><li>○ For audit and tax filings related to 2020 Seadrill Limited will support data requests post transition date</li><li>○ Data requests related to open or future tax reviews or audits to be supported post transition date</li><li>○ Seadrill Limited to provide contact details for third party advisors (i.e., audit, tax, etc.)</li><li>• All inter-company agreements, transfer-pricing agreement and advanced pricing agreements related to any SDLP entity</li><li>• All bank account agreements, signatories, balances, etc.</li><li>• All insurance policies, broker agreements, claims history, etc.</li></ul> |
|---|---|
| Capital Spares | <ul><li>• Make, model, serial number, condition, status, location, historical maintenance and certification records, etc. for each item of SDLP capital equipment in a shore-based warehouse or third-party repair facility</li></ul> |
| Procedures | <ul><li>• All procedures and safety case material to be provided in a format generally acceptable within the industry.</li><li>• All rig-specific procedures; proprietary information excluded.</li><li>• All rig Safety-Cases, redacted to protect any Seadrill Limited proprietary information.</li></ul> |
| Personnel | <ul><li>• All personnel data related to SDLP units including but not limited to comp/benefits, work permits, training certificates, medical, etc.; crew change schedules/rotation; crewing/ manning schedules</li><li>• SDLP to work in good faith through a designated Seadrill Limited Project Manager to provide access to personnel, access to named personnel shall not unreasonably withheld by Seadrill Limited.</li><li>○ Appropriate access to the following individuals:</li><li>▪ **Shore-based Personnel**</li><li>• Rig Manager, Assistant Manager, Operations Engineer</li><li>• Rig Purchasing Manager</li><li>• Rig Accountant</li><li>• Rig Personnel Coordinator</li><li>• Legal and Tax personnel</li></ul> |

| | |
|---|---|
| | **▪ Offshore Personnel**<br>    • OIM, Captain, Maintenance Supervisor/Chief Engineer<br>    • Chief Electrician, Chief Mechanic, Chief Electronic Technician<br>    • Tool pushers and Drillers<br>    • Subsea Engineers<br>    • Rig Materials Coordinators |
| Monthly operating reports | • Provide monthly consolidated financials<br>• Provide monthly trial balance report<br>• Assist with ad-hoc questions if/as needed<br>• Seadrill Limited to provide data; SDLP will prepare the actual filings or submissions |
| Claims reconciliation | • Provide access to AP Hybrid report<br>• Provide access to other supporting payables/accrual detail<br>• Support follow up questions and requests<br>• Seadrill Limited to provide data; direct interaction with claim holders and claims reconciliations to be performed by debtors' advisors<br>• Seadrill Limited will be kept informed of interactions with strategically important vendors (to Seadrill Limited) on a weekly basis |
| Liquidity planning | • Provide inputs for cash collateral budget and forecasting by rig through transition of rigs to new MSA providers:<br>    ○ Accounts receivable / customer receipts<br>    ○ Rig-level opex assumptions<br>    ○ Payroll<br>    ○ Tax<br>    ○ Other |
| Other | • Provide tax structuring support on an ad-hoc basis<br>• Provide consolidated monthly or quarterly financial information as required to support cash collateral order reporting requirements<br>• Provide accounting work papers/data that exists today and at any point prior to June 30, 2021 that may support fresh start accounting<br>• Continue to support 2020 20-F process |

**Exhibit 2**

See Amended SDLP Plan filed concurrently herewith in Case No. 20-35740 (DRJ)

## **Exhibit B**

**Modified Combined Hearing Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | )  | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SEADRILL PARTNERS LLC, *et al.*,[1] | ) | Case No. 20-35740 (DRJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**MODIFIED NOTICE OF COMBINED HEARING**
**TO CONSIDER (A) CONFIRMATION OF THE THIRD**
**AMENDED JOINT CHAPTER 11 PLAN, INCLUDING THE**
**MODIFIED RELEASE PROVISIONS CONTAINED IN ARTICLE VIII THEREOF**
**AND (B) APPROVAL OF DISCLOSURE STATEMENT FILED BY THE DEBTORS**

**PLEASE TAKE NOTICE** on March 24, 2021, the United States Bankruptcy Court for the Southern District of Texas (the "Court") entered an order [Docket No. 441] (the "Disclosure Statement Order") that conditionally approved the *Second Amended Disclosure Statement Relating to the Joint Chapter 11 Plan of Reorganization of Seadrill Partners LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 437] (as may be amended from time to time and including all exhibits and supplements thereto, the "Disclosure Statement"), as containing adequate information, as required under section 1125(a) of title 11 of the United States Code (the "Bankruptcy Code"), for the purposes of solicitation, and authorized the Debtors to solicit votes with regard to the acceptance or rejection of the *Second Amended Joint Chapter 11 Plan of Reorganization of Seadrill Partners LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 426] (the "Second Amended Plan").[2]

**PLEASE TAKE FURTHER NOTICE THAT** on March 26, 2021, in accordance with the Disclosure Statement Order, the Debtors commenced the solicitation of votes to accept or reject the Second Amended Plan.

**PLEASE TAKE FURTHER NOTICE THAT** on April 12, 2021, the Debtors, the Seadrill Parties, and Consenting TLB Lenders reached an agreement in principle with regard to certain disputes relating to, among other things, the existing management services agreements pursuant to which Seadrill Limited manages SDLP's business operations.

---

[1]     A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.primeclerk.com/seadrillpartners.  The location of Debtor Seadrill Partners LLC's principal place of business and the Debtors' service address in these chapter 11 cases is Seadrill Partners LLC, 2nd Floor, Building 11, Chiswick Business Park, 566 Chiswick High Road, London W4 5YS, United Kingdom.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Settlement Order, Disclosure Statement Order (as defined herein), the Disclosure Statement, or the Plan, as applicable.

**PLEASE TAKE FURTHER NOTICE THAT** on April 12, 2021 the Debtors filed the *Joint <u>Emergency</u> Motion for Entry of an Order Approving (I) the Settlement Between the Seadrill Limited Debtors and Seadrill Partners Debtors and (II) the SDLP Debtors' Supplemental Notice with Respect to Their Plan and Disclosure Statement* [Docket No. 486], requesting Court approval of the settlement (the "<u>MSA Settlement</u>").

**PLEASE TAKE FURTHER NOTICE THAT** as part of the MSA Settlement, the Debtors will be granting a full and complete *release* to the Seadrill Parties and related parties (as described below). Unless a Holder of Claims and Interests "opts out" of granting a release (as described below), such Holder will be granting a full and complete release to the Seadrill Parties and related parties (as described below).

**PLEASE TAKE FURTHER NOTICE THAT** as part of the implementation of the MSA Settlement, on April 12, 2021, the Debtors filed the *Third Amended Joint Chapter 11 Plan of Reorganization of Seadrill Partners LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 488] (the "<u>Third Amended Plan</u>", and as may be amended from time to time and including all exhibits and supplements thereto, the "<u>Plan</u>"). **Among other things, the Third Amended Plan modified the releases contained in Article VIII of the Second Amended Plan to include additional parties, as set forth herein.**

**PLEASE TAKE FURTHER NOTICE THAT** on [●], 2021, the Court entered the *Order Approving (I) the Settlement Between the Seadrill Limited Debtors and the Seadrill Partners Debtors and (II) the SDLP Debtors' Supplemental Notice with Respect to their Plan and Disclosure Statement* [Docket No. [●]] (the "<u>Settlement Order</u>"), approving the MSA Settlement.

**PLEASE TAKE FURTHER NOTICE THAT** pursuant to the Plan, Holders of Claims and Interests are entitled to "opt out" of granting the third-party releases set forth in Article VIII of the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** in furtherance of such parties' exercise of this right, the Debtors' Solicitation Materials include the option to "opt out" on either the Ballot, if a Holder of a Claim or Interest is entitled to vote on the Plan, or on the "opt out" form included on a party's notice of non-voting status, if such Holder is not entitled to vote on the Plan (the "<u>Opt Out Election Form</u>").

**PLEASE TAKE FURTHER NOTICE THAT** Holders of Claims and Interests should consider the changes reflected in the Third Amended Plan when determining whether to vote to accept or reject the Plan and whether to "opt out" of the Plan's third-party release provision on their Ballot or Opt Out Election Form, as applicable. For the avoidance of doubt, consistent with the revisions to the definitions of "Released Party" and "Releasing Party" set forth herein and in the Third Amended Plan, Holders of Claims and Interests entitled to vote on the Plan may opt out of the releases in Article VIII of the Plan even if they vote to accept the Plan. The Ballots previously distributed to Holders of Claims and Interests entitled to vote on the Plan included instructions that prohibited such Holders from accepting the Second Amended Plan and, at the same time, opting out of the releases in Article VIII of the Second Amended Plan. Based on the releases as modified by the Third Amended Plan, such restriction no longer applies to you with

respect to your vote on the Plan. As such, Holders of Claims and Interests entitled to vote on the Plan may opt out of the releases in Article VIII of the Plan even if they vote to accept the Plan and you can disregard the portion of the instructions in the Ballot stating to the contrary.

**PLEASE TAKE FURTHER NOTICE THAT** Holders of Claims and Interests that have already submitted their Ballot or their Opt Out Election Form, as applicable, and would like to change their vote or opt out election, may submit a revised Ballot or Opt Out Election Form, as applicable, prior to **May 7, 2021, at 11:59 p.m. (prevailing Central Time)** by contacting seadrillpartnersballots@Primeclerk.com or by visiting https://cases.primeclerk.com/seadrillpartners/EBallot-Home.

**PLEASE TAKE FURTHER NOTICE THAT**, pursuant to the Settlement Order, the Plan Confirmation Schedule (as defined in the Disclosure Statement Order) has been modified as follows:

| Event | Date |
|---|---|
| Plan Supplement Date | April 30, 2021 |
| Cure Objection Deadline | May 7, 2021 at 4:00 p.m. (prevailing Central Time) |
| Voting Deadline | May 7, 2021 at 11:59 p.m. (prevailing Central Time) |
| Plan and Disclosure Statement Objection Deadline | May 7, 2021, at 4:00 p.m. (prevailing Central Time) |
| Deadline to File Voting Report | May 13, 2021, at 4:00 p.m. (prevailing Central Time) |
| Deadline to File Confirmation Brief and/or Omnibus Reply to Any Plan or Disclosure Statement Objection | May 13, 2021 |
| Combined Hearing on Disclosure Statement and Plan | May 14, 2021, at 9:00 a.m. (prevailing Central Time) |

**Release, Exculpation, and Injunction Language in the Plan**

**Please be advised that Article VIII of the Plan contains the following release, exculpation, and injunction provisions:**

**RELEASES BY THE DEBTORS. Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, the Reorganized Debtors, and their Estates from any and all Causes of Action, including any derivative**

3

Claims asserted or capable of being asserted on behalf of the Debtors, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions among the Debtors, the Chapter 11 Cases, the Seadrill MSAs, the historical relationship between the Debtors and the Seadrill Parties and any other matters addressed in the Seadrill Limited Settlement, the formulation, preparation, dissemination, negotiation, or filing of the Plan Support Agreement, the Seadrill Limited Settlement, the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Plan Support Agreement, the Seadrill Limited Settlement, the Disclosure Statement, or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.** As of the Effective Date, each Releasing Party is deemed to have released and discharged each Debtor, Reorganized Debtor, and Released Party from any and all Causes of Action, whether known or unknown, including any derivative claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions between or among the Debtors, the Chapter 11 Cases, the Seadrill MSAs, the historical relationship between the Debtors and the Seadrill Parties and any other matters addressed in the Seadrill Limited Settlement, the formulation, preparation, dissemination, negotiation, or filing of the Plan Support Agreement, the Seadrill Limited Settlement, the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Plan Support Agreement, the Seadrill Limited Settlement, the Disclosure Statement, or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

**EXCULPATION**.  **Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur and each Exculpated Party is released and exculpated from any liability arising from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Plan Support Agreement and related prepetition transactions, the Seadrill Limited Settlement, the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a final order to have constituted actual fraud or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

**INJUNCTION**.  **Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold claims or interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties:  (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date and a Final Order authorizing the actions requested in such motion has been entered, and notwithstanding an indication of a claim or interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.**

**RELEASE OF LIENS.  Except (1) with respect to the Liens securing Other Secured Claims (depending on the treatment of such Claims) or (2) as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and the Holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall execute such documents and take such other actions related thereto or for any related matters as may be reasonably requested by the Debtors or the Reorganized Debtors, as applicable, at the sole expense of the Debtors or Reorganized Debtors, as applicable, to reflect or effectuate such releases and/or address any such related matters as may be reasonably requested by the Debtors or Reorganized Debtors, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns**.

## Definition of Released and Releasing Parties in the Plan

"*Released Party*" means each of, and in each case, in its capacity as such:  (a) the Agent; (b) the Consenting TLB Lenders; (c) the Ad Hoc Committee and each of its members; (d) the Seadrill Parties; (e) all Releasing Parties; (f) each Debtor; (g) each Reorganized Debtor; (h) each Related Party of each Entity in clause (a) through the following clause (i); and (i) each current and former Affiliate of each Entity in clause (a) through this clause (i); *provided*, *however*, that any party that opts out of the releases shall not be a Released Party.

"*Releasing Party*" means each of, and in each case, in its capacity as such:  (a) the Agent; (b) each Consenting TLB Lender; (c) the Seadrill Parties; (d) all Holders of Claims or Interests, solely in their capacities as such, (e) each Related Party of each Entity in clause (a) through the following clause (f); and (f) each current and former Affiliate of each Entity in clause (a) through this clause (f); *provided*, *however*, that any party that opts out of the releases shall not be a Releasing Party.

"*Seadrill Parties*" means (a) Seadrill Limited, a company incorporated under the Laws of Bermuda, (b) Seadrill Member LLC, a limited liability company organized under the Laws of the Republic of the Marshall Islands, (c) Seadrill Partners LLC Holdco Limited, a company incorporated under the Laws of Bermuda, (d) Seadrill New Finance Limited, a company incorporated under the Laws of Bermuda, (e) Seadrill Capricorn HoldCo Limited, a company incorporated under the Laws of Bermuda, (f) Seadrill Management Ltd., a company incorporated under the Laws of England and Wales, and (g) each of the other Entities listed on **Schedule 1** to the Plan.

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**ALL HOLDERS OF CLAIMS OR INTERESTS THAT DO NOT FILE AN OBJECTION WITH THE BANKRUPTCY COURT IN THE CHAPTER 11 CASES THAT EXPRESSLY OBJECTS TO THE INCLUSION OF SUCH HOLDER AS A RELEASING**

**PARTY UNDER THE PROVISIONS CONTAINED IN ARTICLE VIII.C OF THE PLAN OR DO NOT ELECT TO OPT OUT OF THE PROVISIONS CONTAINED IN ARTICLE VIII.C OF THE PLAN IN A BALLOT OR NOTICE OF NON-VOTING STATUS DISTRIBUTED BY THE DEBTORS WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES.   BY OBJECTING TO OR ELECTING TO OPT OUT OF THE RELEASES SET FORTH IN ARTICLE VIII.C OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII.C OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH.**

Houston, Texas
April [•], 2021

Respectfully Submitted,

*/s/ DRAFT*

**JACKSON WALKER L.L.P.**
Matthew D. Cavenaugh (TX Bar No. 24062656)
J. Machir Stull (TX Bar No. 24070697)
Genevieve Graham (TX Bar No. 24085340)
Veronica A. Polnick (TX Bar No. 24079148)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:      (713) 752-4200
Facsimile:      (713) 752-4221
Email:          mcavenaugh@jw.com
                mstull@jw.com
                ggraham@jw.com
                vpolnick@jw.com

*Co-Counsel for the Debtors*
*and Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Brian Schartz, P.C. (TX Bar No. 24099361)
609 Main Street
Houston, Texas 77002
Telephone:      (713) 836-3600
Facsimile:      (713) 836-3601
Email:          brian.schartz@kirkland.com

-and-

Anup Sathy, P.C. (admitted *pro hac vice*)
Chad J. Husnick, P.C. (admitted *pro hac vice*)
Gregory F. Pesce (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          anup.sathy@kirkland.com
                chad.husnick@kirkland.com
                gregory.pesce@kirkland.com

*Co-Counsel for the Debtors*
*and Debtors in Possession*

-and-

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
Justin R. Bernbrock, Esq. (admitted *pro hac vice*)
Robert B. McLellarn, Esq. (admitted *pro hac vice*)
Three First National Plaza
70 West Madison Street, 48th Floor
Chicago, IL 60602
Telephone:      (312) 499-6321
Facsimile:      (312) 499-4741
Email:          jbernbrock@sheppardmullin.com
                rmclellarn@sheppardmullin.com

-and-

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
Lawrence A. Larose, Esq. (admitted *pro hac vice*)
30 Rockefeller Plaza
New York, New York 10122
Telephone:      (212) 896-0627
Facsimile:      (917) 438-6197
Email:          llarose@sheppardmullin.com

-and-

**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
Jennifer L. Nassiri, Esq. (admitted *pro hac vice*)
333 South Hope Street, 43rd Floor
Los Angeles, California 90071
Telephone:      (213) 617-4106
Facsimile:      (213) 443-2739
Email:          jnassiri@sheppardmullin.com

*Conflicts Counsel for the Debtors*
*and Debtors in Possession*