# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| SEADRILL LIMITED, *et al.*,[1] | ) | Case No. 21-30427 (DRJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## MOTION OF SFL LINUS LTD FOR ENTRY OF AN ORDER (I) COMPELLING THE REJECTION OF THE PREPETITION LINUS CHARTERS IN ORDER TO COMMENCE TRANSITION OF RIG MANAGEMENT AND TO PROTECT CUSTOMER FROM OPERATING DISRUPTIONS; (II) CLARIFYING THE SCOPE OF THE STAY AND DISCHARGE INJUNCTIONS; AND (III) GRANTING RELATED RELIEF

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at https://ecf.txwb.uscourts.gov/ within twenty-one (21) days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one (21) days from the date this motion was filed. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

SFL Linus Ltd ("SFL Owner") files this *Motion of SFL Linus Ltd for Entry of an Order (I) Compelling the Rejection of the Prepetition Linus Charters in Order to Commence Transition of Rig Management and to Protect Customer from Operating Disruptions; (II) Clarifying the Scope of the Stay and Discharge Injunctions; and (III) Granting Related Relief* (the "Motion").[2] In support of this Motion, SFL Owner respectfully states as follows:

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at http://cases.primeclerk.com/SeadrillLimited. The location of Debtor Seadrill Americas, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 11025 Equity Drive, Suite 150, Houston, Texas 77041.

[2] Capitalized terms used but not defined herein have the meaning ascribed to them in the *Second Amended Joint Chapter 11 Plan of Reorganization of Seadrill Limited and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1109] (the "Chapter 11 Plan" or "Plan").

## Jurisdiction and Venue

1.       The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  SFL Owner consents to the entry of a final order on this Motion by the Court.

2.       Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.       The bases for the relief requested herein are sections 105, 365 and 503 of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Relief Requested

4.       The Prepetition Linus Charters, pursuant to which the Debtors lease the harsh environment jack-up rig *West Linus* from SFL Owner, will be rejected next week under their Chapter 11 Plan if Confirmed.  The *West Linus* is currently under contract with a major oil customer ("Customer") through December 2028 on commercially beneficial terms for all parties. SFL Owner was therefore hopeful that its current arrangements with the Debtors and Customer would remain in place, and that the Prepetition Linus Charters would be assumed (even on amended terms) notwithstanding the Debtors' latest restructuring.  The Chapter 11 Plan, however, is clear:  the Prepetition Linus Charters will be rejected upon Confirmation absent assumption on mutually acceptable terms.  Despite SFL's repeated efforts throughout these Chapter 11 Cases to preserve the commercial relationship with the Debtors, no mutually acceptable terms have been reached.  SFL Owner therefore files this Motion to obtain immediate authority to exercise its contractual remedies to transition the rig's management to another party acceptable to Customer. The relief is necessary to protect Customer from any operational disruptions, as well as to protect the *West Linus* and provide its crew with clarity around continued employment during the

transition from the Debtors to another operator.  No reason exists to delay starting the process, which SFL Owner expects will take several months given the legal and regulatory requirements that must be satisfied.

5.      By this Motion, SFL Owner seeks entry of an order substantially in the form attached hereto (the "Order") (a) compelling the Debtors to immediately reject the Prepetition Linus Charters effective on the Confirmation Date in order to transition management of the *West Linus* rig to SFL Owner and prevent any interruption of operations for Customer (as defined below); (b) clarifying the scope of the stay and discharge injunctions to authorize SFL Owner's exercise of its contractual rights under the Prepetition Linus Charters and related agreements to effect an orderly and safe transition of the *West Linus* to SFL Owner or its designee, including authorizing SFL Owner to communicate directly with the Customer (as defined below); and (c) granting related relief.  SFL Owner also reserves its rights to assert that, notwithstanding anything contrary in the Chapter 11 Plan, any costs or expenses SFL Owner incurs, or damage that the *West Linus* suffers in connection with the Debtors' rejection and turnover of the *West Linus*, are entitled to payment as administrative expenses under section 503(b) of the Bankruptcy Code.

## **Background**

6.      SFL Corporation Ltd. ("SFL") owns and charters shipping vessels in the tanker, bulker, container and offshore segment.  In 2008 and 2013, certain of the Debtors entered into bareboat charters with certain subsidiaries of SFL, including SFL Owner, under which the semi-submersible rigs *West Taurus* and *West Hercules* and the jack-up rig *West Linus* were leased to certain Debtors under long-term charter agreements (collectively, the "Prepetition SFL

Charters").[3]   As of the Petition Date, the Debtors owed SFL approximately $1.1 billion in aggregate lease obligations under the Prepetition SFL Charters.[4]

       7.     Throughout the Chapter 11 Cases, SFL supported the Debtors' restructuring efforts and worked cooperatively with the Debtors to renegotiate the economic terms governing the Debtors' lease of the *West Taurus* and the *West Hercules*.  First, SFL agreed to the Debtors' rejection of the *West Taurus* bareboat charter, and the terms under which the rig would be returned to SFL.[5]  This reduced the Debtors' lease obligations by $347 million.[6]  Next, SFL and the Debtors confirmed entry into an amended bareboat charter for the *West Hercules*, which permitted, among other things, the Debtors' relocation and continued use of the *West Hercules* on economic terms more favorable to the Debtors.[7]  SFL's concessions were material and allowed the Debtors to reduce their lease obligations related to the *West Hercules* by, in SFL's estimate, $289 million, prompting the Debtors to file revised financial projections.[8]  SFL's concessions so far have allowed the Debtors to reduce their bareboat liabilities by almost $650 million.  SFL, in turn, will receive

---

[3] *See First Amended Disclosure Statement (As Modified) Relating to the Joint Chapter 11 Plan of Reorganization of Seadrill Limited and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 988-1] (the "Disclosure Statement") at pp. 41-42.

[4] *See id.*

[5] *See Order Authorizing  (I) The Rejection of the SFL Taurus Charter Effective as of the Petition Date and (II) The Abandonment of Certain Personal Property, If Any, Related Thereto* [Docket No. 256].

[6] *See Disclosure Statement* at 49.

[7] *See Motion for Entry of an Order (I) Authorizing Assumption and Amendment of the West Hercules Charter Arrangements and (II) Granting Related Relief* [Docket No. 884]; *Order (I) Authorizing Assumption and Amendment of the West Hercules Charter Arrangements and (II) Granting Related Relief* [Docket No. 951].

[8] *See Notice of Filing of Amended Exhibit E to the Disclosure Statement Relating to the Joint Chapter 11 Plan of Reorganization of Seadrill Limited and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 909] (amending financial projections to reflect assumption of *West Hercules* bareboat charter as amended, *e.g.*, "Revenue forecast includes revenue from the West Hercules, per the agreement between Seadrill and SFL on the West Hercules, which is subject to approval by the Bankruptcy Court.").

less than 0.02% recovery on its hundreds of millions of dollars in unsecured claims against the estates.[9]

8.     SFL and SFL Owner were hopeful to reach a consensual agreement with the Debtors for the Debtors' continued lease of the *West Linus*, as they did with the *West Hercules*.[10]  Unfortunately, these negotiations are at an impasse.  As a result, under the Debtors' Chapter 11 Plan (if confirmed next week), the Prepetition Linus Charters will be rejected next week, deemed effective on the Effective Date.[11]  The *West Linus* is currently under contract with a major oil customer ("Customer") through December 2028 at a regularly adjusted market indexed day rate, which was $203,625 per day as of the Petition Date.[12]

9.     Given the Debtors' unambiguous intent to reject the Prepetition Linus Charters, SFL Owner needs to immediately transition operation of the *West Linus* to a new operator acceptable to Customer, a process that can take months to complete given the complex legal and regulatory framework governing the offshore drilling sector.  To protect Customer from any disruption to its operations, and to provide certainty to the rig's crew regarding their employment status, SFL Owner requests this Court to (a) deem the Prepetition Linus Charters rejected as of the Confirmation Date, rather than as of the Effective Date, and (b) authorize the

---

[9] *See Disclosure Statement* at p. 32.

[10] The Debtors and SFL Owner entered into an interim funding and settlement agreement for the *West Linus* in February 2021 (the "Interim Funding Agreement"), which regulates charter hire and permitted withdrawals from accounts constituting SFL's cash collateral relating to the Rig for the period from February 9, 2021 until the Debtors' emergence from chapter 11.  *See Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Use of the Debtors' Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 25].  The Interim Funding Agreement is currently in effect.

[11] *See Plan,* Art. V(L) ("The Prepetition Linus Charters shall be included on the Rejected Executory Contract and Unexpired Lease List and deemed rejected on the Effective Date, unless the Debtors and SFL agree to the terms of amended Prepetition Linus Charters, with the consent of the CoCom and the Ad Hoc Group (not to be unreasonably withheld, conditioned, or delayed).").

[12] *See Disclosure Statement* at 51.

SFL Owner to exercise its enforcement rights under the Prepetition Linus Charters to transition the *West Linus* to a new operator, including authorization to speak directly with Customer.

10. No question exists that the Chapter 11 Plan rejects the Prepetition Linus Charters on the Confirmation Date.[13] While SFL Owner would have preferred to continue its relationship with the Debtors, SFL Owner does not object to their doing so. At issue is only the question of *when* the rejection is deemed effective – on the Confirmation Date or approximately two months later, on the Effective Date. No reason for delay exists here. The Chapter 11 Plan provisions are clear, and the Prepetition Linus Charters, once rejected, cannot magically be resurrected and assumed after the Confirmation Date. Delaying only exposes the Debtors to continued administrative expense claims and the risk of damage claims, with no discernible benefit to their estates. Moreover, delay places the Customer at risk of interrupted drilling production while depressing the recoverable value of the *West Linus* for SFL Owner and its stakeholders.

11. SFL Owner also asks this Court to clarify that the stay and discharge injunctions under sections 362 and 1141 of the Bankruptcy Code and in the Chapter 11 Plan do not prohibit SFL Owner's exercise of its enforcement rights under the Prepetition Linus Charters to the extent such rights enable the safe and expeditious transition of the *West Linus* to SFL Owner or its designee. The Prepetition Linus Charters and related agreements include a "step-in" arrangement that is approved by the Customer. The "step-in" arrangement permits SFL Owner, or its designee, to assume operations of the *West Linus* under the Customer's contract in the event the Debtors fail or are unable to do so. The various agreements thus structure a process through which the *West Linus* can continue to operate safely and with adequate staffing in precisely the

---

[13] *See Plan*, Art. V(L).

situation presented here – where the Debtors can no longer operate the *West Linus* and comply with its obligation to Customer under its *West Linus* drilling contract.

12.     To be clear, SFL Owner is not seeking to enforce any monetary claims against the Debtors, although SFL reserves its rights to submit such claims through the proof of claims and/or motion process as rejection damages, secured or administrative expense claims.  SFL Owner is merely seeking authority to exercise its enforcement remedies and "step-in" rights under the Prepetition Linus Charters and related agreements to transition the *West Linus* to a new operator given the Debtors' rejection of the Prepetition Bareboat Charters.  Because the stay and discharge may be interpreted to preclude any enforcement of such rights against the Debtors, and because the Debtors' employees and operators are presently in possession of the *West Linus* and must be part of the transition process, SFL Owner asks this Court to clarify the parties' respective rights and authorize SFL Owner's enforcement of its remedies notwithstanding the language of the Chapter 11 Plan and Confirmation Order.

**<u>Basis for Relief</u>**

13.     Section 365(d)(2) of the Bankruptcy Code authorizes a debtor to decide whether to assume or reject an executory contract until plan confirmation.  *See In re Mirant Corp.*, 303 B.R. 319, 331 (Bankr. N.D. Tex. 2003) ("Section 365(d)(2) of the Code allows a party to a contract with a debtor to ask the court to force a decision as to assumption or rejection."); *In re Enron Corp.*, 279 B.R. 695, 702-03 (Bankr. S.D.N.Y. 2002); *see also* 11 U.S.C. § 105(d)(2)(A) (authorizing courts to issue orders setting dates by which debtors in possession must assume or reject executory contracts); Bankruptcy Rule 6006(b) ("A proceeding by a party to an executory contract or unexpired lease in a . . . chapter 11 reorganization case, to require the . . . debtor in possession . . . to determine whether to assume or reject the contract or lease is governed by Rule 9014.").  Congress's purpose in crafting this section was to "prevent parties in contractual . . .

relationships with the debtor from being left in doubt concerning their status vis-a-vis the estate." S. REP. NO. 989, 95th Cong., 2d. Sess. 59 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5845 (quoted in *Univ. Med. Ctr.* v. *Sullivan* (*In re Univ. Med. Ctr.*), 973 F.2d 1065, 1078-79 (3d Cir. 1992)).

14.     The Bankruptcy Code thus provides a debtor with a post-petition breathing spell in which to assume or reject an executory contract. *See Enron*, 279 B.R. at 702 (citations omitted). This breathing spell is not unlimited, however. Section 365(d)(2) of the Bankruptcy Code permits any party to an executory contract to ask the Court to fix a time by which a debtor must decide whether to assume or reject its agreement. *See id.* The settled rule is that debtors have a reasonable time in which to do so, a discretionary determination informed by various factors including: (a) the damage the non-debtor will suffer beyond the compensation available under the Bankruptcy Code; (b) the importance of the contract to the debtor's business and reorganization; (c) whether the debtor has had sufficient time to appraise its financial situation and the potential value of its assets in formulating a plan; and (d) whether exclusivity has terminated. *See id.* (*citing Theatre Holding Corp.* v. *Mauro*, 681 F.2d 102, 105 (2d Cir. 1982)); *see also In re Panaco, Inc.*, No. 02-37811-H3-11, 2002 WL 31990368, at *4 (Bankr. S.D. Tex. Dec. 10, 2002) ("The reasonableness of the specified time period is within the court's discretion and depends upon the facts and circumstances of the particular case."). These factors are not exhaustive; courts may consider other factors or focus on only a few. *See, e.g.*, *In re Hawker Beechcraft, Inc..*, 483 B.R. 424, 429 (Bankr. S.D.N.Y. 2012) (listing factors including: (a) the nature of the interests at stake; (b) the balance of hurt to the litigants; (c) the good to be achieved; (d) the safeguards afforded to the litigants; (e) whether the action to be taken is so in derogation of Congress's scheme as to be arbitrary; (f) the debtor's ability to satisfy post-petition obligations; (g) whether the court needs to

determine if the contract is executory; and (h) the purpose of chapter 11 and the determination's effect on the debtor's ability to reorganize).

15.     Even a cursory review of these factors compels the conclusion that the Prepetition Linus Charters should be immediately rejected effective as of the Confirmation Date, not the Effective Date.  The SFL Owner and Customer face significant damage if they have to wait another 60 days post-Confirmation to commence the transition of the *West Linus* operations to another operator.  The *West Linus* is under contract with Customer through December 2028, and SFL Owner has invested substantial capital to modify and equip the *West Linus* specifically for such use.  Customer, likewise, is entitled to uninterrupted drilling production from the *West Linus.* For this reason, the Prepetition Linus Charters and related agreements establish procedures and a framework for transitioning the operation of the *West Linus* to another party in the event that the Debtors are unable to do so, as is the case here given the Debtors' rejection of the Prepetition Linus Charters.

16.     Harsh environment off-shore drilling rigs are not fungible assets that can be readily exchanged with one another, and on information and belief, the Debtors neither own nor have access to another rig that could be readily deployed to Customer in lieu of the *West Linus*. But even if the Debtors had access to such a rig, the Debtors should not be allowed to lever the chapter 11 process artificially to prevent SFL Owner from submitting a competitive bid to Customer for the continued engagement of the *West Linus* as an alternative to any post-Confirmation proposal that the Debtors may have.

17.     The other factors courts consider when deciding whether to compel a debtor's rejection of an executory contract also favor ordering the immediate rejection of the Prepetition Linus Charters effective as of the Confirmation Date.  Two of the most relevant factors

– (a) the importance of the contract to the debtor's business and reorganization and (b) whether the debtor has had sufficient time to appraise its financial situation and the potential value of its assets in formulating a plan – clearly weigh in favor of immediate rejection.  Regarding the importance of the Prepetition Linus Charters to the Debtors, the Chapter 11 Plan answers that question clearly:  they are not, because the Chapter 11 Plan rejects these agreements upon its Confirmation.  The Chapter 11 Plan similarly makes clear that the Debtors have had sufficient time to appraise their financial situation and the potential value of the Prepetition Linus Charters to their operations.  The unambiguous answer is that the Debtors do not believe that the Prepetition Linus Charters are necessary for their operations and that they can and will be rejected.  In sum, no reasonable basis exists to deem the Prepetition Linus Agreements rejected as of the Effective Date.  They should be rejected immediately, effective no later than the Confirmation Date.

18.     The Court should also clarify that neither the automatic stay under Section 362 of the Bankruptcy Code, or the discharge injunction that issues upon the Effective Date, bars SFL Owner's enforcement remedies to replace the Debtors as operators of the *West Linus* under the Prepetition Linus Charters and related agreements.  Section 1141 of the Bankruptcy Code provides, in relevant part, that "the confirmation of a plan. . . discharges the debtor from any debt that arose before the date of such confirmation[.]" *See* 11 U.S.C. § 1141(d)(1)(A).  The Chapter 11 Plan, similarly, enjoins any creditor from "commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any" discharged claim.  *See* Plan, Art. VIII.(E).  Although SFL Owner is only seeking to enforce its contractual remedies to start discussions with Customer, a third party, and is not seeking to enforce any monetary claims against the Debtors other than in accordance with the Chapter 11 Plan, the automatic stay and the Chapter 11 Plan's discharge and injunction

provisions could be interpreted as prohibiting SFL Owner's enforcement of its non-monetary contractual rights to transition the *West Linus* to a new operator upon the effective date of rejection of the Prepetition Linus Charters.  Accordingly, the SFL Owner requests the Court to enter the Order clarifying that nothing in the Chapter 11 Plan or the Bankruptcy Code prevent SFL Owner from exercising all appropriate remedies to safely and efficiently transition the *West Linus* to SFL Owner or its designee.

## Reservation of Rights

19.     Notwithstanding anything in the Chapter 11 Plan to the contrary, SFL Owner reserves all of its rights to assert that the Debtors' rejection of the Prepetition Linus Charters and the return of the *West Linus* to SFL Owner gives rise to postpetition administrative expense claims.  SFL Owner has performed under the Bareboat Charter throughout these Chapter 11 Cases, affording the Debtors the benefit of continuing to operate the *West Linus* and, as a result, receive payments from the Customer.  The Prepetition Linus Charters are leases within the scope of section 365(d)(5) of the Bankruptcy Code, and SFL Owner may therefore have administrative expense claims as a proper remedy for any actual costs, expenses or damages SFL Owner suffers as a result of the Debtors' postpetition conduct relating to their return of the *West Linus*. SFL Owner may also have claims under the Interim Funding Agreement with the Debtors governing the postpetition use of the *West Linus*, and also reserve any and all rights and claims thereunder.

## Notice

20.     SFL Owner will provide notice of this Motion to the:  (a) Debtors; (b) Office of the United States Trustee for the Southern District of Texas; (c) entities listed as holding the 30 largest unsecured claims against the Debtors (on a consolidated basis); (d) counsel to the ad hoc group of the Debtors' senior secured credit facilities; (e) counsel to the CoCom; (f) counsel to the

Ad Hoc Group; (g) Office of the United States Attorney for the Southern District of Texas; (h) state attorneys general for states in which the Debtors conduct business; (i) the Internal Revenue Service; (j) Securities and Exchange Commission; (k) Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (l) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (m) any other party entitled to notice pursuant to Local Rule 9013-1(d).  In light of the nature of the relief requested, no further notice is required.

[*Remainder of page intentionally left blank.*]

## Conclusion

For the reasons set forth above, SFL Owner seeks entry of the Order (a) compelling the Debtors to reject the Prepetition Linus Charters immediately effective upon the Confirmation Date; (b) clarifying the scope of the stay and discharge injunctions to authorize SFL Owner's exercise of its contractual rights under the Prepetition Linus Charters and related agreements, including authorizing SFL Owner to communicate with Customer to effect an orderly transition of the *West Linus* to new management; and (c) granting such other relief as may be just and proper.

Houston, Texas
October 22, 2021

/s/ John F. Higgins
**PORTER HEDGES LLP**
1000 Main Street, 36th Floor
Houston, Texas 77002
Tel: (713) 226-6648
John F. Higgins
E-Mail: JHiggins@porterhedges.com

*Co-Counsel to SFL Corporation Ltd. and its affiliates*

/s/ Andrew N. Rosenberg
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, New York 10019
Tel: (212) 373-3000
Andrew N. Rosenberg
E-mail: arosenberg@paulweiss.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street NW
Washington, D.C. 20006
Tel: (202) 223-7300
Claudia R. Tobler
E-mail: ctobler@paulweiss.com

*Co-Counsel to SFL Corporation Ltd. and its affiliates*

**<u>Certificate of Service</u>**

I certify that on October 22, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ John F. Higgins*
John F. Higgins