United States Bankruptcy Court
Southern District of Texas

**ENTERED**

October 29, 2021

Nathan Ochsner, Clerk

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SEADRILL LIMITED, *et al.*,[1] | ) | Case No. 21-30427 (DRJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | **Re: Docket No.** 890 |

**ORDER APPROVING THE SETTLEMENT BETWEEN THE DEBTORS AND NORTHERN OCEAN LIMITED, INCLUDING THE ASSUMPTION OF CERTAIN CONTRACTS PURSUANT TO SECTION 365(a) OF THE BANKRUPTCY CODE**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) approving a settlement (the "NOL Settlement") by and among the Debtors and Northern Ocean Limited ("NOL") on the terms set forth in the settlement agreement attached hereto as **Exhibit A** (the "Settlement Agreement"), (b) authorizing the Debtors to perform any and all obligations contemplated by the NOL Settlement, including, but not limited to, (i) upon the Effective Date (as defined in the Settlement Agreement) of the NOL Settlement, assuming the West Bollsta BBC, as amended, the Formation Agreement, and the Lundin Drilling Contract, and (ii) providing the releases set forth in the Settlement Agreement, and (c) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §

1 A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at http://cases.primeclerk.com/SeadrillLimited. The location of Debtor Seadrill Americas, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 11025 Equity Drive, Suite 150, Houston, Texas 77041.

2 Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

1334; this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

**IT IS HEREBY FOUND AND CONCLUDED THAT:**

1. The Motion is granted as set forth herein.

2. The Settlement Agreement attached hereto as Exhibit A is hereby approved. The Debtors are authorized and directed to take all actions necessary to immediately continue and fully implement the NOL Settlement in accordance with the terms, conditions, and agreements in the forms attached hereto.

3. Upon the Effective Date (as defined in the Settlement Agreement) of the NOL Settlement, the Debtors shall assume the West Bollsta BBC, as amended, the Formation Agreement, and the Lundin Drilling Contract. In addition to the covenants and agreements set forth in the Settlement Agreement, additional payments owed by or to the Debtors in connection

with assumption of the West Bollsta BBC, as amended, the Formation Agreement, and the Lundin Drilling Contract, including cure payments, shall be US$0.00 in each case.

4. Pursuant to the order entered contemporaneously herewith on the *Northern Ocean Limited's Emergency Motion for Allowance and Immediate Payment of Administrative Claim* [Docket No. 1078] (the "Administrative Claim Order"), Seadrill Norway Operations Ltd. shall pay HHI Deepwater Semi II Inc. the Limited Period Charter Hire Amount relating to the Limited Period (as each is defined in the Administrative Claim Order). For the avoidance of doubt, the payment of the Limited Period Charter Amount removes any further obligations (if any) under the Settlement Agreement or the West Bollsta BBC for the Debtors to pay the Limited Period Charter Hire Amount for the Limited Period.

5. For the avoidance of doubt, Wintershall is not a party to the Settlement Agreement or the Motion, and all of Wintershall's rights and defenses under applicable law and the Bankruptcy Code are fully preserved.

6. This Order shall be binding on the Debtors, their estates, all creditors and parties-in-interest, and any trustee appointed in these cases.

7. The automatic stay under section 362(a) of the Bankruptcy Code is hereby modified with respect to each Debtor as necessary to effectuate all of the terms and provisions of this Settlement Order and the Settlement.

8. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

9. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

10. The Parties are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

11. This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order to the maximum extent allowed by law under the applicable circumstances.

**Signed: October 29, 2021.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

# Exhibit A

## Settlement Agreement

EXECUTION VERSION

# SETTLEMENT AGREEMENT

# TABLE OF CONTENTS


1. DEFINITIONS ....... 4
2. SETTLEMENT ....... 8
3. TERMINATION AND ASSUMPTION OF TRANSACTION DOCUMENTS ....... 10
4. TRANSFER OF OPTION SHARES ....... 11
5. WEST MIRA MANAGEMENT AND WEST MIRA TRANSITION SERVICES ....... 11
6. WEST BOLLSTA BAREBOAT CHARTER AND WEST BOLLSTA TRANSITION SERVICES ....... 13
7. REPRESENTATIONS AND UNDERTAKINGS ....... 15
8. COSTS AND EXPENSES ....... 15
9. CONFIDENTIALITY ....... 15
10. ANNOUNCEMENTS ....... 16
11. NOTICES ....... 16
12. VARIATION ....... 17
13. ASSIGNMENT ....... 17
14. THIRD PARTY RIGHTS ....... 17
15. FURTHER ASSURANCE ....... 18
16. WAIVERS, RIGHTS AND REMEDIES ....... 18
17. SEVERABILITY ....... 18
18. COUNTERPARTS ....... 18
19. GOVERNING LAW AND JURISDICTION ....... 19

SCHEDULE 1 CONDITIONS PRECEDENT ....... 20

SCHEDULE 2 WEST BOLLSTA TRANSITION SERVICES ....... 22

SCHEDULE 3 WEST MIRA TRANSITION SERVICES ....... 27

THIS SETTLEMENT AGREEMENT ("the **Agreement**") is dated 8 August 2021 and made between:

(1) **Seadrill Limited**, a company incorporated under the laws of Bermuda with its registered office at Par-la-Ville Place, 14 Par-la-Ville Road, Hamilton HM 08, Bermuda ("**Seadrill**");

(2) **Seadrill Global Services Ltd**, a company incorporated under the laws of Bermuda with its registered office at Par-la-Ville Place, 14 Par-la-Ville Road, Hamilton HM 08, Bermuda, acting through its branch-company, **Seadrill Global Services Ltd (DMCC Branch)**, incorporated under the laws of United Arab Emirates and having its registered address at 7th Floor, Jumeirah Business Centre 3, Cluster Y, DMCC Free Zone, Jumeirah Lake Towers, P.O. Box 283675, Dubai, U.A.E ("**Seadrill Global**");

(3) **Seadrill Europe Management AS**, a company incorporated under the laws of Norway (company number 996 411 370) and having its registered address at Finnestadveien 28, 4029 Stavanger, Norway (the "**Manager**");

(4) **Seadrill Norway Operations Ltd.** a company organized under the laws of Bermuda with its registered office at Par-la-Ville Place, 4th Floor, 14 Par-la-Ville Road, Hamilton HM08, Bermuda, and which additionally is registered in Norway with Registration No NUF 996732851, having its principal address/office at Finnestadveien 28, 4029 Stavanger Norway ("**Seadrill Norway**");

(the parties listed in items 1 through 4 referred to together as the "**Seadrill Group**"); and

(5) **Seadrill Northern Operations Ltd.**, a company incorporated under the laws of Bermuda with registration no. 54830, and having its registered address at Par-la-Ville Place, Par-la-Ville Road, Hamilton HM08, Bermuda, and which additionally is registered in Norway with registration number. NUF 923 154 868, and having its principal address at Finnestadveien 28, 4029 Stavanger, Norway, (the "**Operator**");

(6) **Northern Drilling Operations Ltd.**, a company incorporated under the laws of Bermuda and having its registered address at Par-la-Ville Place, Par-la-Ville Road, Hamilton HM08, Bermuda ("**NDOL**");

(7) **Northern Ocean Ltd** a company incorporated under the laws of Bermuda and having its registered address at Par-la-Ville Place, Par-la-Ville Road, Hamilton HM08, Bermuda **("NOL")**;

(8) **West Mira Inc**, a company incorporated under the laws of The Marshall Islands and having its registered address at Trust Company Complex, Ajeltake Road, Ajeltake Islands, Majuro, The Marshall Islands MH96960;

(9) **HHI Deepwater Semi II Inc**, a company incorporated under the laws of The Marshall Islands and having its registered address at Trust Company Complex, Ajeltake Road, Ajeltake Islands, Majuro, The Marshall Islands MH96960 (the "**West Bollsta Rig Owner**");

(the parties listed in items 5 to 9 referred to together as the "**NOL Group**"),

together the "**Parties**" and each a "**Party**".
**WHEREAS:**

(A) Seadrill Group parties and the NOL Group parties entered into the Transaction Documents (all terms as defined below) in connection with the acquisition, completion, commissioning, delivery, operations preparation, management and operation, as relevant, of the Units.

(B) Notice of termination of the Wintershall Agreement was sent by Wintershall to the Operator on 4 May 2021 terminating the Wintershall Agreement. Since that date, the Seadrill Group and the NOL Group have negotiated with Wintershall in order to achieve settlement of the termination position which is reflected in the Condition Precedent under this Agreement related to the Release Letter. Given the termination of the Wintershall Agreement by Wintershall, the "WEST MIRA" Unit is no longer on contract to Wintershall and is currently being demobilised by the Manager.

(C) The Seadrill Group has various claims against the NOL Group in connection with the Units, including for sums arising as a result of the operations preparation, management and operation of the Units as well as for alleged failure of the NOL Group entities to perform certain obligations under the Transaction Documents. These claims are disputed by the NOL Group.

(D) The NOL Group has also asserted various counterclaims against the Seadrill Group in connection with the Units and the Transaction Documents. These claims are disputed by the Seadrill Group.

(E) Seadrill and a number of its subsidiaries have filed chapter 11 cases in the US Bankruptcy Court for the Southern District of Texas.

(F) The Parties now wish to agree, as of the Effective Date, to a full and final settlement of all the claims set out in (C) and (D) above, in consideration of the mutual covenants and other valuable consideration set out below.

(G) This Agreement accordingly sets out the terms on which the Parties have agreed to fully and finally settle these claims.

**NOW IT IS HEREBY AGREED THAT IN MUTUAL CONSIDERATION OF THE FOLLOWING TERMS AND CONDITIONS (THE SUFFICIENCY OF WHICH CONSIDERATION IS HEREBY MUTUALLY ACKNOWLEDGED) THAT:**

## 1. DEFINITIONS

### 1.1 Definitions

In this Agreement, unless the context otherwise requires:

"**Affiliate**" means in relation to any company, a company that Controls, is Controlled by, or is under common Control with, such company.

"**Amended and Restated West Bollsta Bareboat Charter**" means the West Bollsta Bareboat Charter as amended and restated by the West Bollsta Bareboat Charter Amendment and Restatement Agreement.

"**Applicable Law**" means any law (including common law and equity), legislation, instrument, rule, order, regulation, directive, by-law or decision which applies to, concerns or otherwise affects any Party's obligations under this Agreement.

"**Conditions Precedent**" means the documents and evidence as listed in Schedule 1 of this Agreement.

"**Claims**" means any and all actual or potential (whether known or unknown) claims, counterclaims, rights of set-off, rights of contribution, rights to indemnity, causes of action, or other rights or interests of any kind, whether arising by law, contract, tort (including negligence), voluntary settlement or in any other manner whatsoever, whether in existence now or coming into existence at some time in the future, whether known or unknown, suspected or unsuspected, in whatever capacity or jurisdiction, which:

(a) Seadrill Group has had, has or may have against one or more members of the NOL Group; and

(b) NOL Group has had, has or may have against one or more members of the Seadrill Group,

in each case, in relation to and/or in connection with the operation, preparation and management of either Unit, as shareholders of the Operator, the Transaction Documents and/or the Wintershall Agreement (including, for the avoidance of doubt, the termination thereof), and any costs, expenses, fees and/or losses in respect of the foregoing **except** if and to the extent arising directly from the terms of this Agreement and/or solely in respect of events occurring on or after the Effective Date.

"**Control**" means, in relation to a company or an entity, the title or beneficial ownership of more than fifty per cent (50%) of the voting shares of such company or entity, as applicable, or by contract, law or any other means whereby a company or an entity has the right to determine the decisions of such a company or entity and "**Controlled**" and "**Controls**" shall have analogous meanings.

"**CP Satisfaction Date**" means the first date on which all Conditions Precedent have been satisfied.

"**dollars**" and "**$**" mean the lawful currency, for the time being, of the United States of America.

"**Effective Date**" means the date falling two Business Days after the CP Satisfaction Date or such other date as may be agreed by the Parties in writing.

"**end of the West Mira Demobilisation Period**" is defined in Clause 5.2.1.

"**FA Termination Date**" is defined in Clause 3.2.2.

"**Formation Agreement**" means the entity formation and operation agreement dated 13 September 2019 (as novated by Northern Drilling Ltd to NOL by way of a novation

agreement dated 3 December 2019) made between (i) Seadrill, (ii) NOL, (iii) Northern Drilling Operations Ltd and (iv) the Operator.

"**Initial Management Agreements**" means the West Bollsta Initial Management Agreement and the West Mira Initial Management Agreement.

"**Lundin**" means Lundin Energy Norway AS (previously known as Lundin Norway AS).

"**Lundin Agreement**" means the drilling contract dated 27 February 2019 made between (i) Lundin and (ii) Seadrill Norway for the provision of a mobile offshore drilling unit.

"**Option Shares**" means all the shares in the Operator legally and beneficially owned by Seadrill.

"**PSA**" means the Petroleum Safety Authority Norway.

"**Release Letter**" means the letter entered into or to be entered into between, amongst others, (i) Wintershall, (ii) the Manager, (iii) Seadrill and (iv) the Operator, agreeing to the termination of the Wintershall Agreement and release of the West Mira Parent Guarantee and confirmation of no further payment and/or compensation against any parties arising out of or related to the Wintershall Agreement.

"**Transaction Documents**" means each of:

(a) the Formation Agreement;

(b) the West Bollsta Heads of Agreement;

(c) the Initial Management Agreements;

(d) the West Bollsta Bareboat Charter; and

(e) the West Mira Management Services Agreement.

"**Units**" means the two semi-submersible drilling rigs being the "WEST BOLLSTA" and the "WEST MIRA" and "**Unit**" shall be construed accordingly.

"**U.S. Bankruptcy Code**" means Title 11 of The United States Code (entitled "Bankruptcy"), as amended from time to time and as now or hereafter in effect, or any successor thereto.

"**West Bollsta Bareboat Charter**" means the bareboat charter agreement dated 17 March 2020 and made between (i) Seadrill Norway as charterer and (ii) the West Bollsta Rig Owner as owner, in respect of the "WEST BOLLSTA" Unit.

"**West Bollsta Bareboat Charter Amendment and Restatement Agreement**" means the amendment and restatement agreement pursuant to which the West Bollsta Bareboat Charter is to be amended and restated in accordance with the terms of this Agreement.

"**West Bollsta Heads of Agreement**" means the heads of agreement dated 27 February 2019 between (i) Northern Drilling Ltd., (ii) the West Bollsta Rig Owner, (iii) Seadrill Norway and (iv) Seadrill.

"**West Bollsta Initial Management Agreement**" means the management agreement dated 31 May 2018 made between (i) the West Bollsta Rig Owner as owner and (ii) Seadrill Global as manager.

"**West Bollsta Transition Services**" means the services to be provided by the Seadrill Group with respect to the "WEST BOLLSTA" Unit on its demobilisation in accordance with the Lundin Agreement or eventual redelivery pursuant to the West Bollsta Bareboat Charter as set out in the Amended and Restated West Bollsta Bareboat Charter and appended to this Agreement at Schedule 2.

"**West Mira Initial Management Agreement**" means the management agreement dated 25 May 2017 made between (i) the West Mira Rig Owner as owner and (ii) Seadrill Global as manager.

"**West Mira Management Services Agreement**" means the management services agreement dated 4 October 2019 made between (i) the Operator and (ii) the Manager as manager.

"**West Mira Parent Company Guarantee**" means the parent company guarantee granted by Seadrill in favour of Wintershall in respect of the Wintershall Agreement.

"**West Mira Transition Services**" means the transition services to be provided in respect of the "WEST MIRA" Unit as agreed between the Parties and as appended to this Agreement at Schedule 3;

"**West Mira Transition Services End Date**" means 31 August 2021 or, if earlier, such date on which the Manager and the Operator mutually agree that the "WEST MIRA" Unit will be handed over from the Seadrill Group to the NOL Group or a person nominated by the NOL Group following completion of the West Mira Transition Services and prior to stacking.

"**Wintershall**" means Wintershall Dea Norge AS.

"**Wintershall Agreement**" means the drilling contract dated 27 June 2018 (as novated by Seadrill Norway to the Operator by an agreement dated 31 October 2019) between (i) Wintershall and (ii) the Operator for the provision of a mobile offshore drilling unit.

**1.2 Construction**

(a) Words in the singular shall include the plural and vice versa.

(b) A reference to one gender shall include a reference to the other genders.

(c) A reference to a statute or statutory provision is a reference to it as it is in force for the time being, taking account of any amendment, extension, or re-enactment and includes any subordinate legislation for the time being in force made under it.

(d) A reference to any other agreement or instrument is a reference to that other agreement or instrument as amended.

(e) A reference to a "regulation" includes any regulation, rule, official directive, request or guideline (whether or not having the force of law) of any governmental, intergovernmental or supranational body, agency, department or regulatory, self-regulatory or other authority or organisation.

(f) This Agreement shall be binding on, and confer a benefit on, the Parties to this Agreement and their respective personal representatives, successors and permitted assigns, and reference to any Party shall include that Party's personal representatives, successors or permitted assigns.

## 2. SETTLEMENT

### 2.1 Effectiveness

Clauses 2.2 and 2.3 shall become effective on, and are conditional upon, the Effective Date.

### 2.2 Payment of incurred costs and West Bollsta charter hire

2.2.1 The Parties agree that the amount owed to the Seadrill Group by the NOL Group is $18,000,000 (eighteen million dollars) inclusive of all applicable VAT charges (the "**Agreed NOL Costs**") which amount satisfies, by way of full and final settlement, all amounts owed and outstanding to the Seadrill Group in respect of all costs incurred including but not limited to:

(a) amounts due from the Operator to the Manager with respect to crew costs for the "WEST MIRA" Unit for the period from 1 April 2021 to and including the West Mira Transition Services End Date in full and final settlement of such "WEST MIRA" Unit crew costs including (subject to Clause 5.4) severance costs and compensation for services rendered;

(b) all amounts due from the Operator to the Manager in respect of the Transition Services for the "WEST MIRA" Unit;

(c) subject to Clause 6.3.2, Clause 6.3.3 and Schedule 2, amounts due from the NOL Group to the Seadrill Group in respect of the Transition Services for the "WEST BOLLSTA" Unit;

(d) the purchase price for the blowout preventer in accordance with Clause 5.2.2;

(e) the cost of spare parts; and

(f) project costs incurred in relation to the Units.

2.2.2 The Parties agree that the amount owed to the West Bollsta Rig Owner by Seadrill Norway for the period from 11 February 2021 to and including 9 August 2021 (both inclusive) in relation to the bareboat charter hire under the West Bollsta Bareboat Charter shall be $18,000,000 (eighteen million dollars), which amount satisfies, by way of full and final settlement, all amounts owed and outstanding to the NOL Group in respect of the West Bollsta Bareboat Charter.

2.2.3 The Parties agree that the amounts as set out in Clause 2.2.1 and Clause 2.2.2 shall be paid by way of set off and accordingly are deemed to be settled between the Parties on the Effective Date, and that no cash payment shall be exchanged between the Parties in relation to these amounts.

**2.3 Settlement and release**

In consideration of each Party's entry into this Agreement and the payment by way of set-off of the amounts set out in Clause 2.2.1 and Clause 2.2.2, as of the Effective Date:

(a) each member of the Seadrill Group, on behalf of itself and its affiliates, bankruptcy estate (including any successor cases under Chapter 7 of the U.S. Bankruptcy Code), current and former officers, directors, members, managers, agents, employees, subsidiaries, parents, heirs, executors, administrators, accountants, attorneys, advisors, and other representatives, predecessors, successors, and assigns hereby releases any and all Claims it has, had or may have against the any member of the NOL Group, together with its affiliates, bankruptcy estate (including any successor cases under Chapter 7 of the U.S. Bankruptcy Code), current and former officers, directors, members, managers, agents, employees, subsidiaries, parents, heirs, executors, administrators, accountants, attorneys, advisors, and other representatives, predecessors, successors, and assigns; and

(b) each member of the NOL Group, on behalf of itself and its affiliates, bankruptcy estate (including any successor cases under Chapter 7 of the U.S. Bankruptcy Code), current and former officers, directors, members, managers, agents, employees, subsidiaries, parents, heirs, executors, administrators, accountants, attorneys, advisors, and other representatives, predecessors, successors, and assigns hereby releases any and all Claims it has, had or may have against the any member of the Seadrill Group, together with its affiliates, bankruptcy estate (including any successor cases under Chapter 7 of the U.S. Bankruptcy Code), current and former officers, directors, members, managers, agents, employees, subsidiaries, parents, heirs, executors, administrators, accountants, attorneys, advisors, and other representatives, predecessors, successors, and assigns.

**2.4 Covenant not to sue**

Each member of the NOL Group covenants in favour of each member of the Seadrill Group and each member of the Seadrill Group covenants in favour of each member of the NOL Group that following the execution of this Agreement, it will not take any step or proceeding or make or assert any claim (whether by way of litigation or otherwise) against a member of the Seadrill Group or a member of the NOL Group (as applicable) in connection with or in relation to (either directly or indirectly) the Claims. In the event that the Effective Date does not occur as provided herein by 31 December 2021, the covenants contained in this Clause 2.4 shall be deemed null and void.

**2.5 Non-admission of liability**

This Agreement is made without any admission of liability on the part of any of the Parties in relation to any of the Claims.

## 3. TERMINATION AND ASSUMPTION OF TRANSACTION DOCUMENTS

### 3.1 Effectiveness

Clauses 3.2 and 3.3 shall become effective on, and are conditional upon, the Effective Date.

### 3.2 Termination of certain Transaction Documents

3.2.1 The Parties agree (and, in the case of the West Bollsta Heads of Agreement, NOL agrees on behalf of Northern Drilling Ltd.) that on the Effective Date:

(a) the West Mira Initial Management Agreement shall be terminated and the provisions of the West Mira Initial Management Agreement including any which are expressly stated in the West Mira Initial Management Agreement as surviving its termination, or which otherwise have done so by implication shall also be terminated;

(b) the West Bollsta Heads of Agreement shall be terminated and the provisions of the West Bollsta Heads of Agreement including any which are expressly stated in the West Bollsta Heads of Agreement as surviving its termination, or which otherwise have done so by implication shall also be terminated;

(c) the West Bollsta Initial Management Agreement shall be terminated and the provisions of the West Bollsta Initial Management Agreement including any which are expressly stated in the West Bollsta Initial Management Agreement as surviving its termination, or which otherwise have done so by implication shall also be terminated; and

(d) the West Mira Management Services Agreement shall be terminated and all provisions of the West Mira Management Services Agreement, including any which are expressly stated in the West Mira Management Services Agreement as surviving its termination, or which might otherwise have done so by implication, shall also at such time be terminated.

3.2.2 On the later of (i) the Effective Date and (ii) the West Mira Transition Services End Date, the Formation Agreement shall terminate (the "**FA Termination Date**"), including any provisions which are expressly stated in the Agreement as surviving its termination, or which might otherwise have done so by implication shall also be terminated.

### 3.3 Assumption of certain Transaction Documents

On the Effective Date:

(a) the West Bollsta Bareboat Charter Amendment and Restatement Agreement shall be deemed to be assumed by the applicable Seadrill Group debtor in accordance with section 365 of the U.S. Bankruptcy Code; and

(b) the Lundin Agreement shall be deemed to be assumed by the applicable Seadrill Group debtor in accordance with section 365 of the U.S. Bankruptcy Code; and

(c) the Formation Agreement shall be deemed to be assumed by the applicable Seadrill Group debtor in accordance with section 365 of the U.S. Bankruptcy Code;

(d) in each case, for purposes of Section 365(b)(1) of the U.S. Bankruptcy Code, the applicable cure amount for the contracts listed in Clause 3.3 (a-c) shall be $0.

**4. TRANSFER OF OPTION SHARES**

**4.1 Effectiveness**

Clause 4.2 shall become effective on, and is conditional upon, the Effective Date.

**4.2 Transfer of Option Shares**

4.2.1 On the FA Termination Date, provided that each member of the NOL Group has complied with its obligations pursuant to the terms of this Agreement and, where applicable, the Amended and Restated West Bollsta Bareboat Charter:

(a) Seadrill shall transfer the Option Shares to NDOL free from all liens, charges and encumbrances and with all rights attached or accruing to them at the FA Termination Date, for $1 (one dollar), the adequacy, sufficiency and receipt of which consideration is hereby agreed and acknowledged by Seadrill and NDOL;

(b) Seadrill shall deliver a duly executed instrument of transfer, together with all relevant share certificates (if any) and any other documents of title in respect of the Option Shares to NDOL; and

(c) Seadrill shall procure that each Seadrill-appointed director is immediately removed or resigns from the board of directors of the Operator.

4.2.2 On or shortly following the FA Termination Date, NOL shall promptly deliver to Seadrill evidence of the registration of the transfer of the Option Shares and the resignation of the Seadrill-appointed directors.

4.2.3 NDOL undertakes that promptly following the FA Termination Date the name of the Operator shall be changed to a name which does not include the word "Seadrill" or any name which is substantially similar to "Seadrill".

4.2.4 Seadrill and NDOL shall each use their respective reasonable endeavours to do such things and execute such documents as may be necessary to give effect to the transfer of the Option Shares in accordance with this Clause 4.2.

**5. WEST MIRA MANAGEMENT AND WEST MIRA TRANSITION SERVICES**

**5.1 Effectiveness**

Clauses 5.2.2 and 5.3 shall become effective on, and are conditional upon, the Effective Date.

**5.2 Demobilisation of the "WEST MIRA" Unit**

5.2.1 The Manager and the Operator hereby acknowledge that all Wintershall-owned equipment and materials have been removed from the "WEST MIRA" Unit and accordingly the "WEST MIRA" Unit has been demobilised as of 18 June 2021 (the "**end of the West Mira Demobilisation Period**").

5.2.2 On the later of (i) 10 August 2021 and (ii) the Effective Date, Seadrill Global shall transfer to the West Mira Rig Owner the blowout preventer (with manufacturer's serial number 113059574-01) for consideration deemed received on the Effective Date as part of the Agreed NOL Costs, as referenced in Clause 2.2.1(d).

**5.3 West Mira Transition Services**

5.3.1 From the end of the West Mira Demobilisation Period until the West Mira Transition Services End Date, the Manager shall provide the West Mira Transition Services to the NOL Group in respect of the "WEST MIRA" Unit in accordance with Schedule 3 of this Agreement with such services being provided in a manner that is consistent with sound rig management practices, and the NOL Group shall provide the Manager and any other member of the Seadrill Group all access and assistance to enable the Manager to do so.

5.3.2 It is agreed that neither the Manager nor any other member of the Seadrill Group shall earn a management fee nor shall they have a right to any additional compensation for services rendered, or reimbursement of overheads incurred in respect of the West Mira Transition Services save as already provided for in the Agreed NOL Costs as set out in Clause 2.2.1 of this Agreement.

**5.4 West Mira employees**

5.4.1 In this Clause 5.4:

"**Act**" means Chapter 16 of the Norwegian Working Environment Act (2005) (Nw.: "*Arbeidsmiljøloven*"), as amended from time to time;

"**Employees**" means the 45 employees who, as of the date of this Agreement, are employed by the Seadrill Employer and engaged in providing West Mira Transition Services, each being an "**Employee**";

"**NOL Group Contractor**" means the stacking contractor as identified by the NOL Group to the Seadrill Group from time to time and prior to 31 August 2021;

"**Seadrill Employer**" means Seadrill Norway Crew AS.

5.4.2 It is agreed as follows:

(a) The NOL Group and the Seadrill Group shall consult and discuss in good faith (subject to data protection laws and regulation and any other applicable laws and regulation) all relevant employee information, consultation processes and other matters as reasonably necessary in order to manage and comply with any possible application of the Act; and

(b) Subject to data protection laws and regulation and any other applicable laws and regulation, the Seadrill Group shall at its own expense provide to the NOL Group, a NOL Group Contractor and/or any new manager such information or documents held by the Seadrill Group as the NOL Group, a NOL Group Contractor and/or any new manager may reasonably require relating to the terms of employment, pension and life assurance arrangements, health benefits, welfare or any other matter concerning any Employees in order to enable any member of the NOL Group, a NOL Group Contractor and/or a new manager to comply with any actual or potential transfer of any Employee's employment to a NOL Group Contractor or a new manager pursuant to the Act.

5.4.3 If a claim is made that the Act shall be applied by one or more of the Employees and the NOL Group and/or a NOL Group Contractor employs or takes on such Employee(s) and, as a result, makes redundant (a) such Employee(s) or (b) another employee as a consequence of employing or taking on the relevant Employee(s), provided that the redundancy commences without undue delay following such Employee(s) being employed or taken on by the NOL Group and/or a NOL Group Contractor, Seadrill shall reimburse NOL for any properly documented costs the NOL Group and/or a NOL Group Contractor incur as a result of payments to such redundant employee(s) in respect of salary and other benefits from the time of termination to the end of the relevant employment, related severance payments and any reasonable legal fees, up to an aggregate amount of $2,000,000 (two million dollars) (the "**Cap**").

5.4.4 The Cap is calculated on the basis that all Employees put forth claims that the Act shall be applied and that they are entitled to be employed by the NOL Group and/or a NOL Group Contractor. To the extent that an Employee continues to be employed by a member of the Seadrill Group, is made redundant by the Seadrill Employer or otherwise leaves the employment of the Seadrill Employer in accordance with the terms of their employment contract or applicable law (otherwise than pursuant to Clause 5.4.3 above), and in each case (a) does not put forth a claim for employment with the NOL Group and/or a NOL Group Contractor within six (6) months of the West Mira Transition Services End Date or (b) where a claim is made within such six (6) month period and the NOL Group and/or a NOL Group Contractor does not employ or take on such Employee within three (3) months of such claim (the "**Seadrill Retained Employees**"), it is agreed that the Cap shall be reduced pro rata to take into account the number of Seadrill Retained Employees.

## 6. WEST BOLLSTA BAREBOAT CHARTER AND WEST BOLLSTA TRANSITION SERVICES

### 6.1 Effectiveness

Clauses 6.2 and 6.3 shall become effective on, and are conditional upon, the Effective Date.

### 6.2 West Bollsta Bareboat Charter

Notwithstanding any term of the West Bollsta Bareboat Charter, the "Charter Hire" (as defined in the West Bollsta Bareboat Charter):

(a) for the period from and including 10 August 2021 to and including 31 August 2021, shall be payable by Seadrill Norway to the West Bollsta Rig Owner on 1 September 2021;

(b) for the period from and including 1 September 2021 to and including 30 September 2021, shall be payable by Seadrill Norway to the West Bollsta Rig Owner on 1 October 2021; and

(c) for any period falling thereafter, shall be payable in accordance with the Amended and Restated West Bollsta Bareboat Charter.

### 6.3 West Bollsta Transition Services

6.3.1 From the earlier of (i) the date on which the Lundin Agreement terminates; or (ii) the date on which the Amended and Restated West Bollsta Bareboat Charter terminates, for a period of 90 days or, if earlier, the date on which the Manager and the West Bollsta Rig Owner mutually agree that the "WEST BOLLSTA" Unit will be handed over from the Seadrill Group to the NOL Group or a person nominated by the NOL Group, the Manager shall provide the

West Bollsta Transition Services to the NOL Group in respect of the "WEST BOLLSTA" Unit in accordance with Schedule 2 of this Agreement with such services being provided in a manner that is consistent with sound rig management practices and on a prompt basis, and the NOL Group shall provide the Manager and any other member of the Seadrill Group all access and assistance to enable the Manager to do so.

6.3.2 The NOL Group (with joint and several liability) shall reimburse the relevant member of the Seadrill Group within 30 days of invoice for:

(a) any costs incurred by any member of the Seadrill Group or its Affiliates to any third party for the provision of services incurred in relation to the West Bollsta Transition Services provided that such third party costs are agreed by NOL (acting reasonably) in advance of incurrence or:

(i) if any third party costs are not agreed by NOL, the Manager shall have no obligation to provide the services to which those third party costs relate; and

(ii) if NOL neither agrees nor rejects the third party costs within 10 Business Days of request from the Manager, the Manager may (in its sole discretion) determine that it shall provide the services to which those third party costs relate and, if it does so provide such services, such third party costs shall be deemed agreed by NOL upon their incurrence by the Manager, though shall only be paid by NOL if written notice to the Director of Operations or Group Controller in NOL has been provided;

(b) subject to paragraph (c), any direct costs incurred by any member of the Seadrill Group or its Affiliates (including the costs of Seadrill Group personnel dedicated to the West Bollsta Transition Services) provided that such direct costs are agreed by NOL (acting reasonably) in advance of incurrence or:

(i) if any direct costs are not agreed by NOL, the Manager shall have no obligation to provide the services to which those direct costs relate; and

(ii) if NOL neither agrees nor rejects the direct costs within 10 Business Days of request from the Manager, the Manager may (in its sole discretion) determine that it shall provide the services to which those direct costs relate and, if it does so provide such services, such direct costs shall be deemed agreed by NOL upon their incurrence by the Manager, though shall only be paid by NOL upon written notice to the Director of Operations or Group Controller in NOL has been provided; and

(c) any direct costs incurred by any member of the Seadrill Group or its Affiliates in the provision of any West Bollsta Transition Services provided by the Manager which have not been pre-approved by NOL but which provision of West Bollsta Transition Services the Manager determines (acting reasonably) is required to ensure the safety of the "WEST BOLLSTA" Unit, any other vessel or any person.

6.3.3 The West Bollsta Transition Services as set out in Schedule 2 are intended to represent a baseline for the applicable activities and, if and to the extent further services are required to facilitate the handover of the "WEST BOLLSTA" unit from the Seadrill Group to the NOL

Group at the relevant time, the parties shall negotiate in good faith with a view to agreeing the scope of such services and, to the extent such services are agreed between the parties, they shall become "**West Bollsta Transition Services**" and:

(d) the Seadrill Group shall use reasonable endeavours to provide such extra services; and

(e) the NOL Group (with joint and several liability) shall reimburse the Seadrill Group for the properly incurred and evidenced costs of such services.

**7. REPRESENTATIONS AND UNDERTAKINGS**

Subject to approval of the terms of this Agreement by the United States Bankruptcy Court for the Southern District of Texas pursuant to the 9019 Motion and the 9019 Order, each Party represents and warrants to the other Parties that on the date of this Agreement and on the Effective Date:

(a) this Agreement constitutes its valid, binding and enforceable obligations, and the execution and performance of this Agreement does not and will not contravene any Applicable Law or any other restriction of any kind, including contractual restrictions binding on it; and

(b) it has the full right, power and authority to execute, deliver and perform this Agreement.

**8. COSTS AND EXPENSES**

Each of the Parties shall bear its own costs and expenses relating to the negotiation, preparation and execution of this Agreement and any other documents as may be required pursuant to its terms.

**9. CONFIDENTIALITY**

**9.1 Restriction on disclosure of confidential information**

Each Party undertakes that all information that may be obtained pursuant to or arising out of this Agreement (including information which relates to the provisions of this Agreement and the negotiations preceding the execution of this Agreement) ("**Confidential Information**") shall not be disclosed, made known, communicated, given or divulged to any person, and shall not be used save for and except:

(a) to a director appointed or an employee employed by it for the purposes of this Agreement;

(b) to its professional advisers, auditors and bankers;

(c) in connection with or as required by any financing arrangements of that Party;

(d) in connection with the Chapter 11 cases filed by Seadrill and certain of its subsidiaries in the U.S. Bankruptcy Court for the Southern District of Texas;

(e) to the extent required by Applicable Law;

(f) to the extent required by any securities exchange or regulatory or governmental body to which that Party is subject, wherever situated, whether or not the requirement for information has the force of law;

(g) to the extent that it has come into the public domain through no fault of that Party or (i) in the case of any member of the Seadrill Group, the fault of any other member of the Seadrill Group; or (ii) in the case of any member of the NOL Group, the fault of any other member of the NOL Group; or

(h) with the prior written consent of the other Parties.

**9.2 Duration of confidentiality obligations**

The obligations contained in this Clause 9 shall continue after the termination of this Agreement, without limit in time.

## 10. ANNOUNCEMENTS

Any announcements by a Party in connection with the subject matter of this Agreement shall be provided to the other Parties for their review within a reasonable time period before such announcements are published and must not contain Confidential Information (unless one of the exceptions set out in Clause 9.1 applies) and (if practicable and permitted by Applicable Law) the announcing Party shall take into account the other Party's reasonable requests concerning the content of the announcement before it is made.

## 11. NOTICES

**11.1 Method of giving notice**

11.1.1 All notices to be given pursuant to this Agreement, subject to clause 11.1.2 below, shall be in writing in the English language and sent by letter (whether by a reputable overnight air courier or personal delivery) or e-mail to the following addresses of the Parties, or such addresses as are notified by a Party to the other Parties from time to time:

**Each member of the Seadrill Group:**

| | |
|---|---|
| Address: | Seadrill Limited c/o Seadrill Management Ltd. 2nd Floor, Building 11, Chiswick Business Park, 566 Chiswick High Road |
| E-mail: | grant.creed@seadrill.com |
| Attention: | Grant Creed |

**Each member of the NOL Group (except, prior to the FA Termination Date, the Operator):**

| | |
|---|---|
| Address: | Par-la-Ville Place, 14 Par-la-Ville Road, Hamilton HM 08, Bermuda |
| E-mail: | james.ayers@front.bm |
| Attention: | James Ayers |

With a copy to Scott McReaken on scott.mcreaken@northerndrillingltd.com

**Operator:**

Address: Par-la-Ville Place, 14 Par-la-Ville Road, Hamilton HM 08, Bermuda
E-mail: james.ayers@front.bm
Attention: James Ayers

Prior to the FA Termination Date, with a copy to Grant Creed on grant.creed@seadrill.com

11.1.2 Notices to be delivered pursuant to clauses 6.3.2(a) and 6.3.2(b) shall be delivered to NOL at the address specified in clause 11.1.1 for the attention of the Director of Operations or Group Controller.

**11.2 Deemed delivery**

A notice shall be deemed delivered:

(a) if delivered personally, on the Business Day after the date on which the notice is actually delivered to the address of the Party (and if the notice is not actually delivered on a Business Day or is actually delivered after 17:00 in the time zone of the relevant address, it shall be deemed actually delivered on the next Business Day);

(b) if sent by overseas air courier, on the date falling three Business Days after the date on which the notice is sent (or, if that date is not a Business Day, the next Business Day); and

(c) if sent by e-mail, on the Business Day after the date on which the notice is sent (and if the notice is not sent on a Business Day or is sent after 17:00 in the time zone of the receiving address, it shall be deemed sent on the next Business Day).

## 12. VARIATION

No variation of this Agreement shall be effective unless it is in writing and signed by each of the Parties. For the avoidance of doubt, the Conditions Precedent are provided for the benefit of all Parties and may not be waived by a single Party.

## 13. ASSIGNMENT

No Party shall, without the prior written consent of the other Parties:

(a) assign (or declare any trust in favour of a third party over) all or any part of the benefit of, or its rights or benefits under, this Agreement; or

(b) novate to any person all or any of its rights and obligations, or otherwise transfer to any person all or any of its rights or obligations under this Agreement.

## 14. THIRD PARTY RIGHTS

A person who is not a Party has no right under the Contract (Rights of Third Parties) Act 1999 to enforce or to enjoy the benefit of any term of this Agreement, save for Clause 2.3(a) and 2.3(b) which is for the benefit of all persons listed therein and which can be enforced by such persons. Notwithstanding any term of this Agreement, the consent of any person who is not a Party is not required to rescind or vary this Agreement at any time.

## 15. FURTHER ASSURANCE

Each Party hereby undertakes at its own expense to take all steps necessary on its part to give full effect to the provisions of this Agreement including, without limitation, to satisfy the Conditions Precedent applicable to them.

## 16. WAIVERS, RIGHTS AND REMEDIES

16.1 No failure or delay on the part of any person in exercising any right or remedy provided by law or under this Agreement shall impair such right or remedy or operate as a waiver or variation of it or preclude its exercise at any subsequent time and no single or partial exercise of any such right or remedy shall preclude or restrict any other or further exercise of it or the exercise of any other right or remedy.

16.2 A waiver by any person of a breach of or default under this Agreement shall not constitute a waiver of any other breach or default and shall not affect the other terms of this Agreement or the rights of any other person thereto.

16.3 Any waiver (in whole or in part) of any right or remedy under this Agreement must be set out in writing, signed by or on behalf of the person granting the waiver and may be given subject to any conditions thought fit by the grantor and, unless otherwise expressly stated, any waiver shall be effective only in the instance and only for the purpose for, and in favour of the person to, which it is given. No waiver will take effect if the person seeking the waiver has failed to disclose to the grantor every material fact or circumstance which (so far as the person seeking the waiver is aware) has a bearing on its subject matter.

16.4 Unless specifically provided otherwise, the rights and remedies of any person under or pursuant to this Agreement are cumulative and in addition to, and not exclusive of, any rights, powers and remedies provided by law.

## 17. SEVERABILITY

If at any time any provision of this Agreement is or becomes illegal, invalid or unenforceable in any respect under the law of any jurisdiction that shall not affect or impair:

(a) the legality, validity or enforceability in that jurisdiction of any other provision of this Agreement; or

(b) the legality, validity or enforceability under the law of any other jurisdiction of that or any other provision of this Agreement.

## 18. COUNTERPARTS

This Agreement may be executed in any number of counterparts, each of which when executed and delivered shall constitute an original, but all the counterparts shall together constitute one agreement. No counterpart shall be effective until each Party has executed and delivered at least one counterpart.

## 19. GOVERNING LAW AND JURISDICTION

### 19.1 Governing law

This Agreement and any dispute or claim (including non-contractual disputes or claims) arising out of or in connection with it or its subject matter or formation shall be governed by and construed in accordance with English law.

### 19.2 Jurisdiction

The courts of England have exclusive jurisdiction to settle any dispute arising out of or in connection with this Agreement or any non-contractual obligations connected with it (including a dispute regarding the existence, validity or termination of this Agreement).

The English courts are the most appropriate and convenient courts to settle any such dispute in connection with this Agreement. Each Party agrees not to argue to the contrary and waives objection to those courts on the grounds of inconvenient forum or otherwise in relation to proceedings in connection with this Agreement.

### 19.3 Service of process

(a) Each of the NOL Group:

(i) irrevocably appoints Schjødt LLP of 48 Gracechurch Street, London, EC3V 0EJ, United Kingdom as its agent for service of process in relation to any proceedings before the English courts in connection with this Agreement; and

(ii) agrees that failure by a process agent to notify it of the process will not invalidate the proceedings concerned.

(b) Each of the Seadrill Group:

(i) irrevocably appoints Seadrill Management Ltd of 2nd Floor, Building 11, Chiswick Business Park, 566 Chiswick High Road, London, W4 5YS, United Kingdom as its agent for service of process in relation to any proceedings before the English courts in connection with this Agreement; and

(ii) agrees that failure by a process agent to notify it of the process will not invalidate the proceedings concerned.

(c) If any person appointed as process agent for any of the NOL Group or the Seadrill Group is unable for any reason to act as agent for service of process, then the relevant member of the NOL Group or the Seadrill Group shall within ten (10) Business Days of such event taking place appoint another agent.

**This Agreement has been entered into on the date stated at the beginning of this Agreement.**

Schedule 1
**CONDITIONS PRECEDENT**

1. Certified copies of the board resolutions of each Party:

   (i) approving or (as the case may be) ratifying the terms of and transactions contemplated in this Agreement to which that Party is (or is to be) party (including, in the case of Seadrill Norway and the West Bollsta Rig Owner, the Amended and Restated West Bollsta Bareboat Charter);

   (ii) approving or (as the case may be) ratifying the entering into by that Party of this Agreement and, in the case of Seadrill Norway and the West Bollsta Rig Owner, the Amended and Restated West Bollsta Bareboat Charter; and

   (iii) authorising or (as the case may be) ratifying the execution by a specified person or persons of that Party of this Agreement and, in the case of Seadrill Norway and the West Bollsta Rig Owner, the Amended and Restated West Bollsta Bareboat Charter.

2. To the extent required by its constitutional documents or any law applicable to it, certified copies of the resolutions signed by all the holders of the issued shares in each Party approving or (as the case may be) ratifying the terms of and transactions contemplated in this Agreement and, in the case of Seadrill Norway and the West Bollsta Rig Owner, the Amended and Restated West Bollsta Bareboat Charter.

3. A copy of the West Bollsta Bareboat Charter Amendment and Restatement Agreement duly executed by Seadrill Norway and the West Bollsta Rig Owner.

4. Certified copies of any power of attorney issued by a Party pursuant to the board resolutions of that Party referred to in paragraph 1 above.

5. Approval of the terms of this Agreement by the United States Bankruptcy Court for the Southern District of Texas pursuant to Federal Rule of Bankruptcy Procedure 9019(a) pursuant to a Motion to Approve Settlement Agreement (the "**9019 Motion**") and one or more orders approving the 9019 Motion and authorizing the Parties' entry into this Agreement (the "**9019 Order**").

6. Evidence that the 9019 Order is not subject to any ongoing appeal and the 9019 Order has become a final order and has not been stayed, suspended, or otherwise withdrawn, and has become and is effective. In respect of this condition precedent, the NOL Group undertakes not to object to the settlement in the United States Bankruptcy Court or elsewhere and will, if requested by the Seadrill Group, provide support for and evidence of agreement with this Agreement.

7. Evidence that the Lundin Agreement, the Amended and Restated West Bollsta Bareboat Charter and the Formation Agreement have been assumed by the relevant Seadrill Group entities.

8. Release Letter duly executed and dated in accordance with the terms thereof.

9. Evidence that the lenders to the NOL Group have no objection to the entry by the NOL Group into this Agreement.

10. A letter from Northern Drilling Ltd. in the form agreed among the Parties prior to the date of this Agreement that Northern Drilling Ltd. agrees to and acknowledges the termination of the West Bollsta Heads of Agreement as of the Effective Date.

Schedule 2

**WEST BOLLSTA TRANSITION SERVICES**

**West Bollsta Transition Scope**

Transition services for the West Bollsta can be provided subject to mutually agreed terms and conditions for a comprehensive settlement of all matters between the Seadrill and NOL group. The below scope is intended to represent a baseline for the applicable activities involved.To the extent that any additional services are agreed between the parties then the cost of such services (as are properly incurred and suitably evidenced) shall be reimbursed by NOL to Seadrill.

| | |
|---|---|
| **General** | |
| Term | Transition services will be provided by the Seadrill group to the NOL group until the date 90 days after either the termination or novation of the Lundin Agreement or, if earlier, the date on which the Seadrill group and the NOL group mutually agree to hand over the West Bollsta (the "**Termination Date**"). Seadrill Limited ("**Seadrill**") shall not be obligated to provide transition services after the Termination Date for the West Bollsta. |
| Transition services fees | As set out in the Term Sheet and the Settlement Agreement. |
| Direct costs | Any direct costs incurred by NOL after the bareboat charter agreement comes to an end are NOL's costs. Any direct costs incurred by SDRL after the bareboat charter agreement comes to an end are SDRL's costs unless approved and agreed to be covered by NOL and, if not so approved and agreed, Seadrill shall have no obligation to provide the relevant service.<br><br>Any direct costs related to the transition services are to be mutually agreed provided however that Seadrill shall be entitled to incur any direct costs related to safety requirements without pre-approval from NOL but which shall be reimbursed by NOL on the same terms as other direct costs agreed to be borne by NOL. |
| **Transition services** | |
| HR | West Bollsta crew change schedules/rotation, crewing/manning schedules and any other relevant documents as may reasonably be requested by the NOL Group and which Seadrill is permitted by law, regulation or otherwise to provide in order to facilitate smooth transition of crew employment from Seadrill to a new employer to be named by NOL. Seadrill to act in good faith in providing NOL access to personnel and not to unreasonably withhold access.<br><br>The parties shall use their best efforts to agree any severance costs incurred by Seadrill in relation to the dismissal of any West Bollsta personnel as a direct result of the termination or novation of the Lundin Agreement at the time of such termination or novation. |
| **Books and records handover** | |

| | |
|---|---|
| Form of Data to be provided | Seadrill to work in good faith to extract and provide data requested in an available format from the systems as reasonably requested by NOL.<br>Specifically in the case of maintenance data, inventory lists, performance and operational data and other records and data collected from software systems, in a format which can be manipulated (Excel or equivalent). Seadrill will not be responsible for bridging Seadrill's systems to a new managers system. |
| Purchasing data | • A list of open purchase orders ("**POs**") will be provided at the Termination Date for commitments that go beyond the Termination Date. Open PO data shall be cleansed to ensure that only valid POs are reported as being open at the Termination Date.<br>• Open POs, applicable to the West Bollsta but which relate to a commitment beyond the Termination Date in the name of a Seadrill entity shall be novated by the Termination Date or cancelled (at NOL's option) with NOL being responsible for any termination costs. Lists of vendors, vendor's contact points and communications will be issued to provide a NOL contact for payment post the Termination Date. Seadrill to advise vendors of the new contact details following the Termination Date.<br>• POs in transit report to be provided at the date of handover, including materials received at freight forwarders, materials in transit and material physically on the West Bollsta but not yet received into inventory.<br>• Historical inventory data with historic cost shall be provided in an Excel format. |
| Contracts | Seadrill will not provide copies of or novate any Seadrill MSAs or contracts.<br>Seadrill to provide a list of all vendors for the rig or equipment onboard the West Bollsta which do not survive the Termination date. |
| AFEs | A list of open AFEs will be provided at the Transition Date. Any historical AFEs will be provided on an as requested basis with all requests to be received 10 days before the Termination Date. Class survey related plans or upgrade plans with cost estimates to be provided to NOL where available. |
| Accounts receivable | Seadrill will, acting in good faith, finalize invoicing and collections with Lundin for any revenues earned prior to the termination or novation of the Lundin Agreement |
| Forecast | Forecasts for the operations of the West Bollsta can be provided as available. |
| Insurance policies | All insurance policies, broker agreements, claims history, etc. to be provided to NOL. |
| Rig maintenance data | Maintenance records history in excel format (exported from Maximo) to be provided to NOL. |
| IT Hardware | All rig owned hardware to remain with the rig. Seadrill owned hardware if any will be returned to Seadrill. |
| IT Software | Seadrill software & systems will be removed from the West Bollsta, provided all rig specific historical data from the systems has been transferred to NOL in accordance with this scope. |

| | |
|---|---|
| Rig Operating data | Rig daily activities and performance data from Rimdrill (QHSE, drill pipe RIH/ Roh, riser running/pulling and BOP testing times) to be provided in a format that can be manipulated. Detailed client well data to be excluded. |
| Rig Documentation | • All documentation as delivered from the shipyard, including complete and certified documentation for upgrades or modifications of the rig.<br>• Operations Manual, DP Manual, equipment manuals (with service bulletins/ recalls/ updates) and all safety related documentation with all associated correspondence or revisions.<br>• Rig Safety Case with any Seadrill proprietary information excluded.<br>• Rig Specific procedures (including, but not limited to equipment manuals, records, drawings, regulatory and Class/ Flag State correspondence) with any Seadrill proprietary information excluded.<br>• Class and Flag status reports, all original certificates and licenses.<br>• Rig daily activities and performance data in excel.<br>• Description of QHSE incidents/accidents on board the West Bollsta.<br>• All documentation relating to equipment acceptance by Lundin.<br>Any rig specific documentation kept onshore shall either be returned to NOL at NOL's cost or destroyed at NOL's option. |
| Regulatory audits | Seadrill to facilitate information transfer related to any regulatory audit reports and findings. |
| Projects | Seadrill to facilitate information transfer related to any ongoing and outstanding projects. |
| Capital spares | A list of all capital spares on the rig and onshore will be provided to NOL in excel. The make, model, serial number, condition, status, location, historical maintenance and certification records, etc. for each item will be provided.<br><br>Capital spares that are presently in repair the cost of such repair/refurbishment will be at NOL's cost.<br><br>All rig based capital spares will remain on the West Bollsta.<br><br>Access to be provided to NOL for all NOL capital spares in storage at a Seadrill facility or third party facility items. All spares to be removed from Seadrill facilities by NOL within two months of the Termination Date at NOL's cost.<br><br>Capital Spares to be removed from third party facilities subject to discussions with the applicable third party. In the event NOL is unable to collect the equipment or agree alternative arrangements within two months of the Termination Date, absent any other agreement, title shall revert to Seadrill. |

| | |
|---|---|
| Inventory loose drilling equipment and all other inventory belonging to the West Bollsta | Seadrill to provide full and complete equipment lists, spare parts lists, critical parts lists and loose drilling equipment lists onshore and offshore, with verified locations, in an Excel format as reasonably requested by NOL.<br><br>Inventory kept on the rig shall remain with the rig.<br><br>Any unpaid amounts related to inter-rig transfers will be paid by the relevant party (NOL or Seadrill).<br><br>All rig based inventory will remain on the West Bollsta.<br><br>Access to be provided to NOL for all inventory in storage at a Seadrill Limited facility or third party facility items. All inventory to be removed from Seadrill facilities by NOL within two months of the Termination Date at NOL's cost.<br><br>Inventory to be removed from third party facilities subject to discussions with the applicable third party. In the event NOL is unable to collect the equipment or agree alternative arrangements within two months of the Termination Date absent any other agreement, the title reverts to Seadrill Limited. |
| Insurance policies | All insurance policies, broker agreements, claims history, etc. to be provided to NOL. |

Schedule 3

**WEST MIRA TRANSITION SERVICES**

EXECUTION VERSION

**West Mira Transition Scope**

Transition services for the West Mira can be provided subject to mutually agreed terms and conditions for a comprehensive settlement of all matters between the Seadrill and NOL group.

| | |
|---|---|
| **General** | |
| Term | Transition services will be provided by the Seadrill group until 31 August 2021 (the "**Termination Date**"). Seadrill Limited ("**Seadrill**") shall not be obligated to provide transition services after the Termination Date for the West Mira. |
| Transition services fees | As set out in the Term Sheet and the Settlement Agreement. |
| **Transition services** | |
| Monthly financial reporting | Until the Termination Date, monthly (being for the months of June, July and August 2021) and quarterly (June-21) reporting to be provided in the format as agreed in the West Mira Management Services Agreement for Seadrill Northern Operations Ltd (the "**VIE**"). Close procedures will continue to be performed in line with Seadrill policies and provided to the VIE. Seadrill group to assist with ad-hoc questions if/as needed. |
| Forecasting | Down manning forecast to be provided. Weekly cash forecast until the Termination Date. No other forecasting shall be applicable. |
| Tax compliance | Until the Termination Date tax compliance to be as required by applicable law (e.g. VAT) and to be prepared and provided to the VIE in accordance therewith. |
| Treasury and cash management | As currently provided through to the Termination Date. NOL to be provided with all bank account agreements, signatories, balances, etc. |
| Accounts payable/Supply chain | As currently provided through to the Termination Date. |
| Accounts receivable | Seadrill will, acting in good faith, finalize invoicing and collections with Wintershall. |
| Marketing | Seadrill will cease to be obliged to market the NOL fleet effective immediately. Seadrill will provide a current list of open tenders but will not provide other transition related open tenders. |
| HR | Seadrill to provide safe minimum manning in line with the manning agreed with NOL until the Termination Date. The cost of the minimum manning is as set out in the Term Sheet and the Settlement Agreement. Any changes required by NOL shall be at NOL's cost. |
| NOL personnel or third parties accessing the rig | Any NOL personnel or third parties accessing the rig during the transition period will be required to abide by Seadrill's Safety Management System and enter into a Mutual Hold Harmless Agreement. |

| **Books and records handover** | |
|---|---|
| Form of Data to be provided | Seadrill to work in good faith to extract and provide data requested by NOL (acting reasonably) in an available format from the systems.<br>Specifically in the case of maintenance data, inventory lists, performance and operational data and other records and data collected from software systems, in a format which can be manipulated (Excel or equivalent). Seadrill will not be responsible for bridging Seadrill's systems to a new manager's system. |
| Purchasing data | • A list of open purchase orders ("**POs**") will be provided each week end until the Termination Date. Open PO data shall be cleansed to ensure that only valid POs are reported as being open at the Termination Date.<br>• Open POs, applicable to the West Mira but in the name of a Seadrill entity, must be cancelled by 31 August with NOL being responsible for any termination costs. NOL will be responsible for the termination costs for any cancelled open POs in the VIE. POs which are under a Seadrill MSA will not be novated. List of vendors, vendor's contact points and communications will be issued to provide a NOL contact for payment post the Termination Date. Seadrill to advise vendors of new contact details for the VIE post termination date.<br>• POs in transit report to be provided at the date of handover, including materials received at freight forwarders, materials in transit and material physically on the West Mira but not yet received into inventory.<br>• Historical inventory data with historic cost shall be provided in an Excel format. |
| Contracts | Seadrill to provide all VIE contracts/MSAs/agreements in effect for the rig or equipment on the West Mira which survives the Termination Date to NOL.<br>Seadrill will not provide copies of or novate any Seadrill MSAs or contracts.<br>Seadrill to provide a list of all vendors for the rig or equipment onboard the Mira which do not survive the Termination date. |
| AFEs | A list of open AFEs to be provided at the Termination Date. Any historical AFEs will be provided on an as requested basis with all requests to be received 10 days before the Termination Date. Class survey related plans or upgrade plans with cost estimates also to be provided where available. |
| Legal entity handover | Appropriate personnel will be made available to hold a handover meeting for the closing balance sheet, statutory audit and tax requirements and to assist with any questions the NOL group may have in relation thereto.<br><br>All legal-entity historical accounting, tax, treasury, legal, governance and compliance data to be provided in an available format available from the relevant systems. Such data shall include, but not be limited to:<br>• All legal, governance, treasury documentation since the VIE's inception, including any intercompany agreement or related party agreements with SDRL subsidiaries as may be applicable; |

| | |
|---|---|
| | • All general ledger, subledger, trial balance, balance sheet (with detailed and itemized reconciliation for each GL balance sheet account) and income statement data since the VIE's inception to be provided including walkthrough of closing balance sheets and income statement as at 31 August 2021;<br>• All AP invoices since inception of the VIE.<br>• Seadrill will support data requests including invoices and journal support for regulatory audit and tax filings post Termination Date;<br>• Seadrill to provide contact details for third party advisors (i.e., audit, tax, etc.)<br>• Rig importation and customs records;<br>• Financial statements and extended trial balances will be provided as may be available<br>• Written confirmation that the 2020 statutory audit is complete or provide status thereof if audit is not complete. |
| FY2021 Statutory audit | Seadrill will support the statutory audit of the YTD financials as at the Termination Date. The audit will be performed by PwC to statutory materiality for the VIE. The audit is to take place in October 2021. |
| Insurance policies | All insurance policies, broker agreements, claims history, etc. to be provided to NOL. |
| Rig maintenance data | Maintenance records history in excel format (exported from Maximo) to be provided to NOL. |
| IT Hardware | All rig owned hardware to remain with the rig. Seadrill owned hardware if any will be returned to Seadrill. |
| IT Software | Seadrill software & systems will be removed from the West Mira, provided all rig specific historical data from the systems has been transferred to NOL in accordance with this scope. |
| Rig Operating data | Rig daily activities and performance data from Rimdrill. QHSE, drill pipe RIH/ Roh, riser running/pulling and BOP testing times) to be provided in a format that can be manipulated. Detailed client well data to be excluded. |
| Rig Documentation | • All documentation as delivered from the shipyard, including complete and certified documentation for upgrades or modifications of the rig.<br>• Operations Manual, DP Manual, equipment manuals (with service bulletins/ recalls/ updates) and all safety related documentation with all associated correspondence or revisions.<br>• Rig Safety Case with any Seadrill proprietary information excluded.<br>• Rig Specific procedures (including, but not limited to equipment manuals, records, drawings, regulatory and Class/ Flag State correspondence) with any Seadrill proprietary information excluded.<br>• Class and Flag status reports, all original certificates and licenses<br>• Rig daily activities and performance data in excel.<br>• Description of QHSE incidents/accidents on board the West Mira.<br>• All documentation relating to equipment acceptance by Wintershall. |

| | |
|---|---|
| | • Any rig specific documentation kept onshore shall either be returned to NOL at NOL's cost or destroyed at NOL's option. |
| Regulatory audits | Seadrill to facilitate information transfer related to any regulatory audit reports and findings. |
| Projects | Seadrill to facilitate information transfer related to any ongoing and outstanding projects. |
| Capital spares | A list of all capital spares on the rig and onshore will be provided to NOL in excel. The make, model, serial number, condition, status, location, historical maintenance and certification records, etc. for each item will be provided.<br><br>Capital spares that are presently in repair the cost of such repair/refurbishment will be at NOL's cost.<br><br>All rig based capital spares will remain on the West Mira.<br><br>Access to be provided to NOL for all NOL capital spares in storage at a Seadrill facility or third party facility items. All spares to be removed from Seadrill facilities by NOL within two months of the Termination Date at NOL's cost.<br><br>Capital Spares to be removed from third party facilities subject to discussions with the applicable third party. In the event NOL is unable to collect the equipment or agree alternative arrangements within two months of the Termination Date, absent any other agreement, title shall revert to Seadrill. |
| Inventory loose drilling equipment and all other inventory belonging to the West Mira | Seadrill to provide full and complete equipment lists, spare parts lists, critical parts lists and loose drilling equipment lists onshore and offshore, with verified locations, in an Excel format as reasonably requested by NOL.<br><br>Inventory kept on the rig shall remain with the rig.<br><br>Any unpaid amounts related to inter-rig transfers will be paid by the relevant party (NOL or Seadrill).<br><br>All rig based inventory will remain on the West Mira. |

| | |
|---|---|
| | Access to be provided to NOL for all inventory in storage at a Seadrill Limited facility or third party facility items. All inventory to be removed from Seadrill facilities by NOL within two months of the Termination Date at NOL's cost.<br><br>Inventory to be removed from third party facilities subject to discussions with the applicable third party. In the event NOL is unable to collect the equipment or agree alternative arrangements within two months of the Termination Date absent any other agreement, the title reverts to Seadrill Limited. |

Signed by Grant Creed
**Seadrill Limited**

............................................................
Authorised Signatory

Signed by Grant Creed
**Seadrill Global Services Ltd** acting by **Seadrill Global Services Ltd (DMCC Branch)**

............................................................
Authorised Signatory

Signed by Grant Creed
**Seadrill Europe Management AS**

............................................................
Authorised Signatory

Signed by Grant Creed
**Seadrill Norway Operations Ltd.**

............................................................
Authorised Signatory

Signed by
**Seadrill Northern Operations Ltd.**

............................................................
Authorised Signatory

Signed by
**Northern Drilling Operations Ltd**

............................................................
Authorised Signatory

Signed by
**Northern Ocean Ltd**

............................................................
Authorised Signatory

Signed by
**West Mira Inc**

............................................................
Authorised Signatory

Signed by
**HHI Deepwater Semi II Inc**

............................................................
Authorised Signatory

Signed by
**Seadrill Limited**

................................................................
Authorised Signatory

Signed by
**Seadrill Global Services Ltd** acting by **Seadrill Global Services Ltd (DMCC Branch)**

................................................................
Authorised Signatory

Signed by
**Seadrill Europe Management AS**

................................................................
Authorised Signatory

Signed by
**Seadrill Norway Operations Ltd.**

................................................................
Authorised Signatory

Signed by Scott McReaken
**Seadrill Northern Operations Ltd.**

DocuSigned by:
Scott McReaken
5E844709E9A547F...
Authorised Signatory

Signed by James Ayers
**Northern Drilling Operations Ltd**

DocuSigned by:
CF1DD578BD0D494...
Authorised Signatory

Signed by James Ayers
**Northern Ocean Ltd**

DocuSigned by:
CF1DD578BD0D494...
Authorised Signatory

Signed by James Ayers
**West Mira Inc**

DocuSigned by:
CF1DD578BD0D494...
Authorised Signatory

Signed by James Ayers
**HHI Deepwater Semi II Inc**

DocuSigned by:
CF1DD578BD0D494...
Authorised Signatory