**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| SEADRILL LIMITED, *et al.*,[1] | ) | Case No. 21-30427 (DRJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' OBJECTION TO**
**MOTION OF SFL LINUS LTD FOR**
**ENTRY OF AN ORDER (I) COMPELLING**
**THE REJECTION OF THE PREPETITION LINUS**
**CHARTERS IN ORDER TO COMMENCE TRANSITION**
**OF RIG MANAGEMENT AND TO PROTECT CUSTOMER FROM**
**OPERATING DISRUPTIONS; (II) CLARIFYING THE SCOPE OF THE STAY**
**AND DISCHARGE INJUNCTIONS; AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

hereby file this objection (this "Objection") to the *Motion of SFL Linus Ltd for Entry of an Order*

*(I) Compelling the Rejection of the Prepetition Linus Charters in Order to Commence Transition*

*of Rig Management and to Protect Customer from Operating Disruptions; (II) Clarifying the*

*Scope of the Stay and Discharge Injunctions; and (III) Granting Related Relief* [Docket No. 1125]

(the "Motion") filed by SFL Linus Ltd ("SFL Owner") and state as follows in support of this

Objection.[2]

---

[1]    A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at http://cases.primeclerk.com/SeadrillLimited.  The location of Debtor Seadrill Americas, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 11025 Equity Drive, Suite 150, Houston, Texas 77041.

[2]    Capitalized terms used but not defined herein have the meaning ascribed to them in the *Second Amended Joint Chapter 11 Plan of Reorganization of Seadrill Limited and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1109] (the "Plan"), which was confirmed on October 26, 2021 pursuant to the *Order Confirming the Second Amended Joint Chapter 11 Plan of Reorganization of Seadrill Limited and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1158] (the "Confirmation Order").

## **Preliminary Statement**

1.      The Court should deny the Motion.  The Plan already provides for agreed treatment of the charters under which the Debtors lease the *West Linus* from SFL Owner.  Specifically, the Plan says that "[t]he Prepetition Linus Charters shall be included on the Rejected Executory Contract and Unexpired Lease List and ***deemed rejected on the Effective Date***, unless the Debtors and SFL agree to the terms of amended Prepetition Linus Charters."[3]  The Debtors negotiated this language with SFL Owner and their bankruptcy counsel, and the language has been in the Plan since it was filed on July 24, 2021.  The Effective Date of the Plan is expected to occur around yearend 2021.  The Debtors maintain some hope that an agreement on amended terms can be reached with SFL Owner by the Effective Date, but the ongoing negotiations are challenging and unpredictable.

2.      Concurrently with the filing of this Objection, the Debtors have filed an amendment to the Plan Supplement that adds the Prepetition Linus Charters to the Rejected Executory Contract and Unexpired Lease List, as expressly contemplated by the Plan.  In the absence of an agreement on amended terms, the Debtors will be compelled to step-up their contingency planning in relation to demobilizing the *West Linus* and turning over the rig to SFL Owner in a safe and orderly fashion around the Effective Date.  For a number of reasons, this takes time:  the Debtors need to safely secure wells that are being drilled and demobilize the rig and its crew.  This is subject to where the rig is in its current well schedule and the prevailing weather conditions, given the rig is operating in the harsh environment sector.  To ensure drilling operations remain unaffected, these actions cannot be embarked upon until all attempts to reach a successful resolution with SFL Owner have

---

[3]     Plan, Art. V.L (emphasis added).

been exhausted, and the Debtors' primary focus must always be on ensuring the safety and wellbeing of its crew.

3.    Critically, the Debtors also need to address the existing customer contract for the *West Linus* (the "Customer Contract"). Under that contract, the rig is currently conducting live drilling operations for the customer (the "Customer") until 2028. The Debtors have commenced discussions with the Customer and will work closely with them to achieve a desirable outcome for all stakeholders. However, if the Debtors are unable to reach a viable solution with SFL Owner, the Debtors will have no choice but to add the Customer Contract to the Rejected Executory Contract and Unexpired Lease List, which the Plan expressly permits until 45 days after the Effective Date.[4]

4.    Accordingly, none of the relief requested in the Motion is necessary or appropriate. The Debtors negotiated specific language with SFL Owner making rejection effective as of the Effective Date of the Plan, unless an agreement is reached before then. The Debtors also negotiated an interim agreement with SFL Owner, reflected in the Cash Collateral Order, which provides for the post-petition charter amount payable in the intervening period.[5] The Debtors intend to comply with these agreed, Court-ordered arrangements. There is no good reason, or legal basis, to deviate from them.

---

[4]   *Id.*, Art. V.A ("Notwithstanding anything to the contrary in the Plan, the Debtors, with the consent (which may be provided through electronic mail) of the CoCom and Ad Hoc Group (which consent shall not be unreasonably withheld), or the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Rejected Executory Contract and Unexpired Lease List or Assumed Executory Contract and Unexpired Lease List identified in this Article V.A and in the Plan Supplement at any time through and including 45 days after the Effective Date.").

[5]   *See Final Order (I) Authorizing Use of the Debtors' Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 253], ¶ 26.

KE 81145521

5.      Nor is there any need or basis to modify the automatic stay or discharge injunction to permit SFL Owner to exercise contractual rights under the Prepetition Linus Charters.   In particular, SFL Owner's focus on the "step-in right" in the Prepetition Linus Charter is misplaced. First, even ignoring the Bankruptcy Code overlay, SFL Owner has no actual step-in right under the Prepetition Linus Charters.  The applicable provision is merely an agreement to negotiate, and any agreement between the Debtors and SFL Owner would require the Customer's consent.[6] Second, and more importantly, whatever step-in right exists is utterly unenforceable upon rejection under the Bankruptcy Code.  The Prepetition Linus Charters that give rise to the purported step-in right are being rejected.   And the law is clear that upon rejection, SFL Owner's remedy for damages arising from rejection is to file a prepetition general unsecured claim for damages, not to receive specific performance or other remedies under the rejected contracts.[7]

6.      In short, unless a mutually acceptable agreement between the Debtors and SFL Owner can be achieved, the Prepetition Linus Charters will be rejected as of the Effective Date, the rig will be turned over to SFL Owner on or around such date, when it is operationally safe to do so, and SFL Owner can talk to the Customer (or anyone else) about a contract regarding the future use of the rig after it is redelivered to SFL Owner.  Until then, no relief is needed from

---

[6]     *See* Drilling Rig Services Agreement No. 95761 by and among Nordea Bank AG (publ), filial i Norge, SFL Linus Ltd., North Atlantic Linus Charterer Ltd., the Customer, and Ship Finance International Limited ("***[S]ubject to the written consent by [the Customer]***, in the event that [SFL Owner] declares the Bareboat Charter to be in default, [SFL Owner] or an entity nominated by [SFL Owner] shall be entitled to enter into or approve the entering into of an agreement with [the Customer] on the same terms and conditions as the Contract and with the right and obligation to deliver, fulfill and receive the same services, rights and obligations as set out in the Contract.") (emphasis added).

[7]     *See In re Lakeshore Const. Co. of Wolfeboro, Inc.*, 390 B.R. 751, 758–59 (Bankr. D.N.H. 2008); *In re Lyondell Chem. Co.*, 542 F. App'x 41 (2d Cir. 2013); *Moglia v. Pac. Emp'rs Ins. Co. of N. Am.*, 547 F.3d 835, 837 (7th Cir. 2008); *In re Continental Airlines*, 125 F.3d 120, 133–36 (3d Cir. 1997); *and Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1048 (4th Cir. 1985).

4

the Court, and no deviation from the existing Court-approved arrangements is warranted. Accordingly, the Motion should be denied.

## **Relevant Factual Background**

7.      SFL Corporation Ltd ("SFL"), one of the world's largest ship owning companies, has historically leased three drilling rigs to the Debtors for use in drilling operations:   the *West Linus*, the *West Hercules*, and the *West Taurus*.   SFL is affiliated with Hemen Holding Ltd., which is the Debtors' largest prepetition shareholder.   Before and after the Petition Date, the Debtors, in consultation with their advisors, analyzed the related charter agreements to determine whether it was necessary or desirable to maintain them.   Before the Petition Date and continuing to today, SFL has been heavily involved in many aspects of the Debtors' restructuring.   Throughout these chapter 11 cases, SFL has been represented by sophisticated bankruptcy counsel.

8.      As of the Petition Date, the *West Taurus* was off contract and cold stacked. The Debtors determined that the charter agreement for the *West Taurus* was burdensome to the Debtors' estates and negotiated a consensual rejection of such agreement with SFL. On March 9, 2021, the Court approved that rejection.[8]   The *West Taurus* has since been turned over to SFL.

9.      For the other two rigs, the Debtors and SFL negotiated interim arrangements for the post-petition period, which are memorialized in the cash collateral order (the "Interim Funding Agreements").[9]   The Interim Funding Agreements provide for, among other things, reduced

---

[8]     *See Order Authorizing (I) the Rejection of the SFL Taurus Charter Effective as of the Petition Date and (II) the Abandonment of Certain Personal Property, If Any, Related Thereto* [Docket No. 256].

[9]     *Final Order (I) Authorizing Use of the Debtors' Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 253]; *Stipulation and Agreed Order Among the Debtors, the CoCom, and the Ad Hoc Group Extending a Deadline in the Cash Collateral Order* [Docket No. 882]; *Order (I) Authorizing Use of the Debtors' Cash*

post-petition charter payments from the Debtors to SFL from the Petition Date until the Debtors' emergence from chapter 11.  The Interim Funding Agreements were put in place to allow the Debtors and SFL to negotiate more definitive long-term arrangements for the *West Hercules* and the *West Linus* during the post-petition period.

10.     Midway through the case, the Debtors reached an agreement with SFL on the *West Hercules*, which the Court approved on August 27, 2021.[10]  This left only the *West Linus* to be resolved.  To that end, the Debtors and SFL Owner included agreed language in the Plan that provided for what would happen if the *West Linus* could not be resolved.  In advance of confirmation, counsel to SFL Owner called counsel to the Debtors and asked to add language to the Plan along these lines.  Following some back and forth, the following language was agreed upon between the Debtors and SFL Owner:

> **Prepetition SFL Charters**
>
> The Prepetition Linus Charters shall be included on the Rejected Executory Contract and Unexpired Lease List and deemed rejected on the Effective Date, unless the Debtors and SFL agree to the terms of amended Prepetition Linus Charters, with the consent of the CoCom and the Ad Hoc Group (not to be unreasonably withheld, conditioned, or delayed).
>
> If the Prepetition Linus Charters are rejected, the Claims for rejection damages shall be included in (a) Class 1 Other Secured Claims, solely in the amount of the applicable pledged earnings accounts and receivables as of the Effective Date, and (b) the balance shall be included as Class 6 General Unsecured Claims.  If amended Prepetition Linus Charters are entered into with respect of the Prepetition Linus Charters on the Effective Date, then such amended Prepetition Linus Charters shall amend and supersede the Prepetition Linus Charters in all respects and entry into the

---

*Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 950].

[10]     *Order (I) Authorizing Assumption and Amendment of the West Hercules Charter Arrangements and (II) Granting Related Relief* [Docket No. 951].

amended Prepetition Linus Charters shall be in full and final satisfaction of all Claims on account of such Prepetition Linus Charters.

The Prepetition Taurus Charter was rejected by Final Order of the Bankruptcy Court and the Claims arising therefrom shall be included in Class 6 General Unsecured Claims.

11.     The Debtors and SFL Owner have been working for months to negotiate consensual amendments to the Prepetition Linus Charters.  The parties spent many hours discussing various options for restructuring the contracts in a way that would be mutually beneficial.  Despite good faith negotiations throughout these chapter 11 cases, the Debtors and SFL Owner have so far been unable to reach agreement.  Accordingly, under the agreed language in the confirmed Plan, the Debtors intend to reject the Prepetition Linus Charters as of the Effective Date.[11]

## <u>Argument</u>

### I.     **The Motion Is Procedurally Defective and Should Be Denied.**

12.     The Motion is procedurally defective; although styled as a motion to compel rejection and for relief from the automatic stay, the Motion in fact asks the Court to modify the confirmed Plan.  A request to modify the Plan could be styled as an objection to the Plan or as a motion to reconsider Confirmation of the Plan, and the Motion is neither.  If the Motion can be considered an objection to the Plan, it would have been untimely (as the Motion was filed on October 22, 2021, which was 15 days after the Plan objection deadline of October 7, 2021).  If the Motion is considered a request to reconsider Confirmation of the Plan, SFL would need to meet a high bar by showing excusable neglect, newly-discovered evidence, fraud, or the like.[12]  SFL did not make this showing in its Motion, so the Motion should be denied.

---

[11]     Plan, Art. V.L.

[12]     *See* Fed. R. Bankr. P. 9024 (making Fed. R. Civ. P. 60 applicable to bankruptcy cases); Fed. R. Civ. P. 60(b) ("On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new

**A.     If the Motion Is Considered a Plan Objection, It Should Be Denied As Untimely.**

13.     A confirmed plan of reorganization is binding upon a debtor and its creditors.[13]  As a Plan objection, the Motion should have been filed with the Court "within a time fixed by the court."[14]  The Court set October 7, 2021 as the deadline to object to the Plan.[15]  The Motion was filed on October 22, 2021.  The Plan was confirmed on October 26, 2021, meaning the provisions of the Plan are now binding on the Debtors and SFL.[16]

14.     By failing to timely object to the Plan, SFL Owner is precluded from artfully asserting a Plan objection.[17]

15.     The fact that SFL Owner filed the Motion prior to the Confirmation Hearing does not change the analysis; giving any weight to this fact would render the Disclosure Statement

---

trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party, (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.").

[13]  11 U.S.C. § 1141 ("[T]he provisions of a confirmed plan bind the debtor . . . and any creditor . . . .").  *See also* Confirmation Order, ¶¶ 65, 113–14 ("[T]his Confirmation Order shall be immediately effective and enforceable and not subject to avoidance, recharacterization or other challenge, legal or otherwise, and deemed binding upon the Debtors or Reorganized Debtors, as applicable . . . and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.").

[14]  Bankruptcy Rule 3020.

[15]  *See Order (I) Approving the Adequacy of the Disclosure Statement, (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Proposed Joint Plan of Reorganization, (III) Approving the Forms of Ballots and Notices in Connection therewith, (IV) Approving the Form of the AOD Cash-Out Election Form (V) Approving the Rights Offering Procedures and Related Materials, (VI) Scheduling Certain Dates with Respect thereto, and (VII) Granting Related Relief* [Docket No. 988].

[16]  11 U.S.C. § 1141.

[17]  *See In re Varat Enters.*, 81 F.3d 1310, 1317 (4th Cir. 1996) (holding that a creditor's failure to raise objections during the confirmation process precluded their consideration after plan confirmation); *In re All. Operating Corp.*, 173 B.R. 326, 328, 330 (E.D. La. 1994) (finding that where a party did not object to or appeal a confirmed plan's treatment of certain issues, the confirmed plan "barred [the parties] from relitigating [the issues] by the doctrine of *res judicata*"), *aff'd*, 60 F.3d 1174 (5th Cir. 1995).

KE 81145521

Order, section 1141 of the Bankruptcy Code, the Confirmation Order, and the Plan null.[18] SFL Owner, like all other parties, is bound by the confirmed Plan, which provides for the rejection of the Prepetition Linus Charters as of the Effective Date.

**B.** **As a Request to Reconsider, the Motion Is Insufficient.**

16.     The Confirmation Order has been entered and the Plan is binding on all parties, and if SFL Owner wants the Court to modify the terms of the confirmed Plan, SFL Owner must bring a motion to reconsider under Bankruptcy Rule 9024.  Such a motion requires showing (a) mistake, inadvertence, surprise, or neglect, (b) newly-discovered evidence, (c) fraud, (d) the judgment is void or has been satisfied, or (e) any other reason that justifies relief.[19]  This is extraordinary relief that should not be granted lightly "in light of the great desirability of preserving the principle of the finality of judgments."[20]  SFL Owner did not allege any facts that justify this extraordinary relief.

---

[18]   11 U.S.C § 1141; Confirmation Order, ¶ 123; Plan, Art. XII.G.

[19]   *See* Bankruptcy Rule 9024 (making Fed. R. Civ. P. 60 applicable to bankruptcy cases); Fed. R. Civ. P. 60(b) ("On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:  (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party, (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.").

[20]   *In re Marinez*, 589 F.3d 772, 777 (5th Cir. 2009) (The following factors "should inform the district court's consideration of a motion under [Federal] Rule [of Civil Procedure] 60(b):  (1) That final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was made within a reasonable time; (5) whether if the judgment was a default or a dismissal in which there was no consideration of the merits the interest in deciding cases on the merits outweighs, in the particular case, the interest in the finality of judgments, and there is merit in the movant's claim or defense; (6) whether if the judgment was rendered after a trial on the merits the movant had a fair opportunity to present his claim or defense; (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack. These factors are to be considered in the light of the great desirability of preserving the principle of the finality of judgments.") (quoting *U.S. v. Gould*, 301 F.2d 353, 355-56 (5th Cir. 1962)); *see also Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 356 (5th Cir. 1993); *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. 1981).

II.     **Even If the Motion Were Procedurally Proper, It Fails on the Merits Because the Rejection Should Be Effective on the Effective Date.**

17.     Even if the Motion were considered a proper request to compel rejection, the Motion should be denied and the rejection of the Prepetition Linus Charters should be effective as of the Effective Date of the Plan.  The Bankruptcy Code provides that a court "on the request of any party to [an executory] contract . . . may order the [debtor] to determine within a specified period of time whether to assume or reject such contract" and the movant bears the "very high burden" to demonstrate cause to shorten this period.[21]  Here, cause does not exist to fast-forward the Debtors' rejection and safe redelivery of the *West Linus*.  SFL Owner knows the Debtors' intentions with respect to the Prepetition Linus Charters and a quicker rejection will provide them little to no benefit.  Moreover, they already agreed to the applicable timeline for rejection through unambiguous Plan language.

18.     The Debtors need the time between now and the Effective Date to safely prepare for redelivery of the *West Linus* to SFL Owner, which is the timeline the Debtors negotiated with SFL and put into the Plan.  Relying on this negotiated timeline, the Debtors have been focused on negotiating agreed amendments to the Prepetition Linus Charters rather than preparing to return the *West Linus*.  In the absence of an agreement on amended terms, the Debtors will step-up the development of a redelivery plan that will be complete on or around the Effective Date.  It was not

---

[21]     *In re Greater Se. Cmty. Hosp. Corp.*, 327 B.R. 26, 34 (Bankr. D.D.C. 2005); *In re Republic Techs. Int'l, LLC*, 267 B.R. 548, 554 (Bankr. N.D. Ohio 2001); *In re Kmart Corp.*, 290 B.R. 614, 620 (Bankr. N.D. Ill. 2003).  The relevant factors include (a) whether there is a need for judicial determination as to whether an executory contract exists; (b) the good to be achieved; (c) the nature of the interests at stake; (d) the damage that the contract counterparty will suffer beyond the compensation available under the Bankruptcy Code; (e) the safeguards afforded to the contract counterparties; (f) the balance of harm to the contract counterparties; (g) whether the action to be taken is so in derogation of Congress's scheme that the court may be said to be arbitrary; (h) the importance of the contract to the debtor's business and reorganization; (i) the debtor's failure or ability to satisfy postpetition obligations; (j) whether exclusivity had terminated; and (k) "above all" the purpose of chapter 11, which is to permit successful rehabilitation of debtors.  *See, e.g., In re Teligent Inc.*, 268 B.R. 723, 738–39 (2d Cir. 2001); *In re Theatre Holding Corp.*, 681 F.2d 102, 105–06 (2d Cir. 1982); *In re Adelphia Commc'ns Corp.*, 291 B.R. 283, 293–94 (Bankr. S.D.N.Y. 2003); *Kmart*, 290 B.R. at 619.

10

complete prior to Confirmation, and it is not complete today.  If SFL wanted to change the agreed timeline, it could have negotiated for an earlier rejection timeline in the Plan.

19.      SFL Owner all but ignores the complexity of the demobilization process.  Even if the Motion is granted, delivery of a drilling rig requires more than simply delivering the keys. Rather, the Debtors will need weeks to demobilize and wind-down operations in an orderly manner.  This is not news to SFL Owner or the Debtors, who have been aware of this contingency in the event the parties could not reach a deal to amend the Prepetition Linus Charters.  It was for this reason that the Debtors provided in the Plan that the Prepetition Linus Charters would be rejected as of the Effective Date, which would provide them with the time necessary to safely deliver the *West Linus* to SFL Owner.  In any event, by the time the Debtors have completed their demobilization Plan, delivery of the *West Linus* to SFL Owner will likely occur around the Effective Date.  As such, the relief requested in the Motion is unnecessary and inappropriate and should be denied.

**III.    There Is No Basis to Modify the Automatic Stay or Discharge Injunction.**

20.      The Debtors are puzzled at SFL Owner's request to clarify the scope of the automatic stay in order to establish a go-forward business relationship with the Customer.  The automatic stay and Plan injunction do not prevent SFL Owner and the Customer from engaging in negotiations relating to the *West Linus*'s go-forward operations for a scenario where the *West Linus* is redelivered to SFL Owner; such negotiations do not implicate any property of the Debtors' estates.

21.      SFL Owner has no right to step into the Debtors' shoes in the Customer Contract. The "step-in" rights that SFL Owner asserts it has under the Prepetition Linus Charters and related agreements are not actually contractually binding obligations, but simply agreements to attempt to negotiate if the Debtors are unable to continue operating the *West Linus*.  Any such agreement

11

KE 81145521

would expressly require the Customer's consent.  Further, even if SFL Owner had such a right, once rejection of the Prepetition Linus Charters is effective, SFL Owner cannot require the Debtors to perform their obligations under the rejected contracts.

22.     To the extent SFL Owner is seeking relief to enforce the terms of the Prepetition Linus Charters following rejection, SFL Owner cannot compel the Debtors to perform under the terms of a rejected contract.  A debtor is required to perform its contractual obligations under the terms of a lease until it is rejected and "the lessor has repossessed the leased property."[22]  After the lessor repossesses the leased property, if the terms of the unexpired lease require the debtor to provide further services, such as redelivery services, the lessor can assert a claim against the debtor's estate for any rejection damages resulting from the debtor's failure to provide such services, and specific performance is not an available remedy.[23]  Requiring a debtor to perform the obligations of a rejected contract would defeat the rehabilitative purpose of section 365 of the Bankruptcy Code.[24]

23.     There is no basis to modify the automatic stay or discharge injunction because none of SFL Owner's proposed actions implicate the Debtors' property.  If SFL Owner wishes to discuss

---

[22]  *See In re Lakeshore Const. Co. of Wolfeboro, Inc.*, 390 B.R. 751, 758–59 (Bankr. D.N.H. 2008) ("The language of § 365(d)(5) sets the end of the Debtor's duty to perform obligations under that provision of the Bankruptcy Code as the time when the Lease is assumed or rejected.  The Court finds that once the lessor of personal property has repossessed the leased property and is in the process of exercising its remedies under the lease, the period for performance by a debtor-in-possession or trustee under § 365(d)(5) has ended under the terms of the statute.").

[23]  *See In re Lyondell Chem. Co.*, 542 F. App'x 41 (2d Cir. 2013); *Moglia v. Pac. Emp'rs Ins. Co. of N. Am.*, 547 F.3d 835, 837 (7th Cir. 2008) ("[R]ejection does not avoid the debtor's obligations but simply replaces specific performance with damages."); *In re Continental Airlines*, 125 F.3d 120, 133–36 (3d Cir. 1997); *Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1048 (4th Cir. 1985) (stating that, upon rejection of an executory contract, claimant "would be entitled to treat rejection as a breach and seek a money damages remedy; however, it could not seek to retain its contract rights in the technology by specific performance even if that remedy would ordinarily be available upon breach of this type of contract").

[24]  *See supra* note 21.

terms of a potential agreement between SFL and the Customer for use of the *West Linus* after it is returned to SFL Owner, the Debtors' property is not implicated.  Following rejection, SFL Owner will have a right to file a rejection damages claim, but will have no property right that implicates the automatic stay or discharge injunction.

### <u>Conclusion</u>

24.    As provided in the Debtors' confirmed Plan, the Prepetition Linus Charters are scheduled to be rejected as of the Effective Date.  The Debtors have already begun preparations to safely redeliver the *West Linus*, but that is the extent of the Debtors' obligations upon rejection. SFL Owner cannot compel the Debtors to perform under the rejected Prepetition Linus Charters and SFL Owner has no relevant property right that implicates the automatic stay or discharge injunction.  Instead, SFL Owner's remedy is to file a rejection damages claim.

KE 81145521

Based on the foregoing, the Debtors request that the Motion be denied with prejudice.

Houston, Texas
November 19, 2021

*/s/  Matthew D. Cavenaugh*

| | |
|---|---|
| **JACKSON WALKER L.L.P.** | **KIRKLAND & ELLIS LLP** |
| Matthew D. Cavenaugh (TX Bar No. 24062656) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Jennifer F. Wertz (TX Bar No. 24072822) | Anup Sathy, P.C. (admitted *pro hac vice*) |
| Vienna F. Anaya (TX Bar No. 24091225) | Ross M. Kwasteniet, P.C. (admitted *pro hac vice*) |
| Victoria Argeroplos (TX Bar No. 24105799) | Spencer Winters (admitted *pro hac vice*) |
| 1401 McKinney Street, Suite 1900 | 300 North LaSalle Street |
| Houston, TX 77010 | Chicago, Illinois 60654 |
| Telephone:   (713) 752-4200 | Telephone:  (312) 862-2000 |
| Facsimile:   (713) 752-4221 | Facsimile:  (312) 862-2200 |
| Email:      mcavenaugh@jw.com | Email:      asathy@kirkland.com |
|               jwertz@jw.com |               rkwasteniet@kirkland.com |
|               vanaya@jw.com |               spencer.winters@kirkland.com |
|               vargeroplos@jw.com | |
| | - and - |
| *Co-Counsel to the Debtors* | **KIRKLAND & ELLIS LLP** |
| *and Debtors in Possession* | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| | Christopher Marcus, P.C. (admitted *pro hac vice*) |
| | 601 Lexington Avenue |
| | New York, New York 10022 |
| | Telephone:  (212) 446-4800 |
| | Facsimile:  (212) 446-4900 |
| | Email:      cmarcus@kirkland.com |
| | |
| | *Co-Counsel to the Debtors* |
| | *and Debtors in Possession* |

14

KE 81145521

## **Certificate of Service**

I certify that on November 19, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh