United States Bankruptcy Court
Southern District of Texas
ENTERED
January 11, 2022
Nathan Ochsner, Clerk

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| SEADRILL LIMITED, *et al.*,[1] | ) | Case No. 21-30427 (DRJ) |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Re: Docket No. 1312** |

**ORDER APPROVING THE SETTLEMENT BETWEEN THE DEBTORS AND NORTHERN DRILLING LIMITED AND ITS AFFILIATES**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) approving a settlement (the "NODL Settlement") by and among the Debtors and Northern Drilling Limited ("NODL") on the terms set forth in the settlement agreement attached hereto as **Exhibit A** (the "Settlement Agreement"), (b) authorizing the Debtors to perform any and all obligations contemplated by the NODL Settlement, and (c) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334; this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having

---

1 A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at http://cases.primeclerk.com/SeadrillLimited. The location of Debtor Seadrill Americas, Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 11025 Equity Drive, Suite 150, Houston, Texas 77041.

2 Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted as set forth herein.

2. The Settlement Agreement attached hereto as Exhibit A is hereby approved. The Debtors are authorized and directed to take all actions necessary to immediately continue and fully implement the NODL Settlement in accordance with the terms and conditions hereof.

3. This Order shall be binding on the Debtors, their estates, all creditors and parties-in-interest, and any trustee appointed in these cases.

4. The automatic stay under section 362(a) of the Bankruptcy Code is hereby modified with respect to each Debtor as necessary to effectuate all of the terms and provisions of this Settlement Order and the Settlement.

5. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

6. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

7. The Parties are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

8. This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order to the maximum extent allowed by law under the applicable circumstances.

**Signed: January 11, 2022.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

# Exhibit A

## Settlement Agreement

**SEADRILL LIMITED**

**SEADRILL GLOBAL SERVICES LTD**

**SEADRILL MANAGEMENT LIMITED**

**NORTHERN DRILLING LTD.**

**WEST AQUILA INC.**

**WEST COBALT INC.**

**WEST LIBRA INC.**

---

# SETTLEMENT DEED

---

Slaughter and May
One Bunhill Row
London EC1Y 8YY
RWB/ESG

Contents Page

| | | |
|---|---|---|
| 1. | DEFINITIONS | 2 |
| 2. | SETTLEMENT | 5 |
| 3. | TERMINATION OF AGREEMENTS | 6 |
| 4. | REPRESENTATIONS AND WARRANTIES | 6 |
| 5. | PROVISION OF INFORMATION | 7 |
| 6. | COSTS AND EXPENSES | 8 |
| 7. | CONFIDENTIALITY | 8 |
| 8. | ANNOUNCEMENTS | 9 |
| 9. | NOTICES | 9 |
| 10. | VARIATION | 10 |
| 11. | ASSIGNMENT | 10 |
| 12. | THIRD PARTY RIGHTS | 11 |
| 13. | FURTHER ASSURANCE | 11 |
| 14. | WAIVERS, RIGHTS AND REMEDIES | 11 |
| 15. | SEVERABILITY | 11 |
| 16. | COUNTERPARTS | 12 |
| 17. | EXECUTION AS A DEED | 12 |
| 18. | GOVERNING LAW AND JURISDICTION | 12 |
| SCHEDULE 1 CONDITIONS PRECEDENT | | 14 |

**THIS SETTLEMENT DEED** (the "**Deed**") is dated 20 December 2021 and made between:

(1) **SEADRILL LIMITED**, a company incorporated under the laws of Bermuda with its registered office at Par-la-Ville Place, 14 Par-la-Ville Road, Hamilton HM 08, Bermuda ("**Seadrill**");

(2) **SEADRILL GLOBAL SERVICES LTD**, a company incorporated under the laws of Bermuda with its registered office at Par-la-Ville Place, 14 Par-la-Ville Road, Hamilton HM 08, Bermuda, acting through its branch-company, **Seadrill Global Services Ltd** (**DMCC Branch**), incorporated under the laws of United Arab Emirates and having its registered address at 7th Floor, Jumeirah Business Centre 3, Cluster Y, DMCC Free Zone, Jumeirah Lake Towers, P.O. Box 283675, Dubai, U.A.E; and

(3) **SEADRILL MANAGEMENT LIMITED**¸ a company incorporated under the laws of England (company number 08276358) and having its registered address at 2nd Floor Building 11, Chiswick Business Park 566 Chiswick High Road, London, W4 5YS;

(the parties listed in items 1 to 3 referred to together as the "**Seadrill Group**"); and

(4) **NORTHERN DRILLING LTD.**, a company incorporated under the laws of Bermuda, and having its registered address at Par-la-Ville Place, 14 Par-la-Ville Road, Hamilton HM 08, Bermuda ("**NODL**");

(5) **WEST AQUILA INC.**, a company incorporated under the laws of the Marshall Islands and having its registered address at Trust Company Complex, Ajeltake Road, Ajeltake Island, Marshall Islands MH96960 ("**West Aquila**");

(6) **WEST COBALT INC.**, a company incorporated under the laws of the Marshall Islands and having its registered address at Trust Company Complex, Ajeltake Road, Ajeltake Island, Marshall Islands MH96960 ("**West Cobalt**"); and

(7) **WEST LIBRA INC.**, a company incorporated under the laws of the Marshall Islands and having its registered address at Trust Company Complex, Ajeltake Road, Ajeltake Island, Marshall Islands MH96960 ("**West Libra**");

(the parties listed in items 4 to 7 referred to together as the "**Northern Drilling Group**"),

together the "**Parties**" and each a "**Party**".

**WHEREAS**:

(A) Seadrill Group parties have provided and each of West Aquila and West Libra accepted (albeit on an undocumented basis) certain construction supervision, preservation and maintenance management services in respect of the "West Aquila" and "West Libra" Units. Furthermore, Seadrill Group parties have also provided and West Cobalt accepted certain services in respect of the Cobalt Explorer Unit.

(B) The Seadrill Group has asserted various claims against the Northern Drilling Group in connection with payment for services provided and referred to in (A) above (which are disputed by the Northern Drilling Group) and Northern Drilling Group entities have

presented various counterclaims against the Seadrill Group in respect of the services provided and referred to in (A) above (which are disputed by the Seadrill Group) (the claims by the Seadrill Group against the Northern Drilling Group and the counterclaims by the Northern Drilling Group against the Seadrill Group being, when taken together, the "**Management Related Claims**").

(C) Seadrill and a number of its subsidiaries have filed chapter 11 cases in the US Bankruptcy Court for the Southern District of Texas.

(D) In addition, the Northern Drilling Group has informed the Seadrill Group that it is likely there will be commenced separate arbitration proceedings with Daewoo Shipbuilding & Marine Engineering Co. Ltd ("**DSME**") as builder on the one hand and (separately) West Cobalt, West Aquila and West Libra on the other and as purchasers (all of these three potential arbitration proceedings being together herein, the "**DSME Disputes**").

(E) This Deed sets out the terms on which the Parties have agreed to fully and finally settle the Management Related Claims and to undertake to provide a degree of future assistance in respect of the DSME Disputes, as set out in this Deed.

**NOW IT IS HEREBY AGREED THAT**:

## 1. DEFINITIONS

### 1.1 Definitions

In this Deed, unless the context otherwise requires:

"**Affiliate**" means in relation to any company, a company that Controls, is Controlled by, or is under common Control with, such company.

"**Agreements**" means all and any documents and/or arrangements considered and/or agreed (by writing, oral agreement or course of conduct), whether or not concluded and/or otherwise made binding between any member of the Northern Drilling Group on the one hand and any member of the Seadrill Group on the other in relation to the Units, which shall include, for the avoidance of doubt and if and to the extent that they are or are held to be effective, the Draft Agreements.

"**Applicable Law**" means any law (including common law and equity), legislation, instrument, rule, order, regulation, directive, by-law or decision which applies to, concerns or otherwise affects any Party's obligations under this Deed.

"**Business Day**" means any day that is not a Saturday or Sunday and is not a public holiday in Bermuda, Norway or the United Kingdom.

"**Claims**" means any and all actual or potential (whether known or unknown) claims, counterclaims, rights of set-off, rights of contribution, rights to indemnity, causes of action, or other rights or interests of any kind, whether arising by law, contract, tort (including negligence), voluntary settlement or in any other manner whatsoever, whether in existence now or coming into existence at some time in the future, whether known or unknown, suspected or unsuspected, in whatever capacity or jurisdiction, which:

(a) any member of the Seadrill Group has had, has or may have against one or more members of the Northern Drilling Group; and

(b) any member of the Northern Drilling Group has had, has or may have against one or more members of the Seadrill Group,

in each case, in relation to the Management Related Claims, DSME Disputes and/or outstanding obligations and any rights, costs, expenses, fees and/or losses up to the Effective Date in relation to the operations preparation, management, preservation and maintenance of the Units under the Agreements.

"**Conditions Precedent**" means the documents and evidence as listed in Schedule 1 of this Deed.

"**Control**" means, in relation to a company or an entity, the title or beneficial ownership of more than fifty per cent (50%) of the voting shares of such company or entity, as applicable, or by contract, law or any other means whereby a company or an entity has the right to determine the decisions of such a company or entity and "**Controlled**" and "**Controls**" shall have analogous meanings.

"**CP Satisfaction Date**" means the first date on which all Conditions Precedent have been satisfied.

"**Draft Agreements**" means altogether the following, the terms of which were all discussed in the period up to April and May 2020:

(a) draft shipyard construction supervision and preservation and maintenance services agreements in relation to the "West Aquila" and "West Libra" Units; and

(b) a draft deed of agreement in relation to certain services provided in respect of the "Cobalt Explorer" Unit.

"**DSME**" has the meaning given to it in the Recitals.

"**DSME Disputes**" has the meaning given to it in the Recitals.

"**Effective Date**" means the Business Day immediately following the CP Satisfaction Date or such other date as may be agreed by the Parties in writing.

"**Management Related Claims**" has the meaning given to it in the Recitals.

"**Requested Documents**" has the meaning given to it in Clause 5.3.

"**Units**" means the three ultra-deepwater capable drill ships known as the "West Aquila", the "West Libra" and the "Cobalt Explorer" and "**Unit**" shall mean any one of them.

"**U.S. Bankruptcy Code**" means Title 11 of The United States Code (entitled "Bankruptcy"), as amended from time to time and as now or hereafter in effect, or any successor thereto.

**1.2 Construction**

(a) Words in the singular shall include the plural and vice versa.

(b) A reference to a statute or statutory provision is a reference to it as it is in force for the time being, taking account of any amendment, extension, or re-enactment and includes any subordinate legislation for the time being in force made under it.

(c) A reference to any other agreement or instrument is a reference to that other agreement or instrument as amended.

(d) A reference to a "regulation" includes any regulation, rule, official directive, request or guideline (whether or not having the force of law) of any governmental, intergovernmental or supranational body, agency, department or regulatory, self-regulatory or other authority or organisation.

(e) This Deed shall be binding on, and confer a benefit on, the Parties to this Deed and their respective personal representatives, successors and permitted assigns, and reference to any Party shall include that Party's personal representatives, successors or permitted assigns.

**2. SETTLEMENT**

**2.1 Effectiveness**

Clause 2.2 shall become effective on, and is conditional upon, the Effective Date.

**2.2 Settlement and release**

In consideration of each Party's entry into this Deed and without any payment required whatsoever, as of the Effective Date:

(a) each member of the Seadrill Group, on behalf of itself and its affiliates, bankruptcy estate (including any successor cases under Chapter 7 of the U.S. Bankruptcy Code), current and former officers, directors, members, managers, agents, employees, subsidiaries, parents, heirs, executors, administrators, accountants, attorneys, advisors, and other representatives, predecessors, successors, and assigns hereby releases any and all Claims it has, had or may have against any member of the Northern Drilling Group, together with its affiliates, current and former officers, directors, members, managers, agents, employees, subsidiaries, parents, heirs, executors, administrators, accountants, attorneys, advisors, and other representatives, predecessors, successors, and assigns; and

(b) each member of the Northern Drilling Group, on behalf of itself and its affiliates, current and former officers, directors, members, managers, agents, employees, subsidiaries, parents, heirs, executors, administrators, accountants, attorneys, advisors, and other representatives, predecessors, successors, and assigns hereby releases any and all Claims it has, had or may have against the any member of the Seadrill Group, together with its affiliates, bankruptcy estate

(including any successor cases under Chapter 7 of the U.S. Bankruptcy Code), current and former officers, directors, members, managers, agents, employees, subsidiaries, parents, heirs, executors, administrators, accountants, attorneys, advisors, and other representatives, predecessors, successors, and assigns.

**2.3 Covenant not to sue**

Each member of the Northern Drilling Group covenants in favour of each member of the Seadrill Group and each member of the Seadrill Group covenants in favour of each member of the Northern Drilling Group that, following the execution of this Deed, it will not take any step or proceeding or make or assert any claim (including by assisting or encouraging any third party so to do and whether by way of litigation or otherwise) against a member of the Seadrill Group or a member of the Northern Drilling Group (as applicable) in connection with or in relation to (either directly or indirectly) the Claims. In the event that the Effective Date does not occur as provided herein by 31 January 2022, the covenants contained in this Clause 2.3 shall be deemed null and void.

**2.4 Non-admission of liability**

This Deed is made without any admission of liability on the part of any of the Parties in relation to any of the Claims.

**3. TERMINATION OF AGREEMENTS**

**3.1 Effectiveness**

Clause 3.2 shall become effective on, and is conditional upon, the Effective Date.

**3.2 Termination of Agreements**

On the Effective Date, all and any Agreements (to the extent any of these could be deemed to be in effect as at the Effective Date, which is not admitted by any Party) will be immediately terminated.

**4. REPRESENTATIONS AND WARRANTIES**

Subject to approval of the terms of this Deed by the United States Bankruptcy Court for the Southern District of Texas, each Party represents and warrants to the other Parties that on the date of this Deed and on the Effective Date:

(a) this Deed constitutes its valid, binding and enforceable obligations, and the execution and performance of this Deed does not and will not contravene any Applicable Law or any other restriction of any kind, including contractual restrictions binding on it; and

(b) it has the full right, power and authority to execute, deliver and perform this Deed.

## 5. PROVISION OF INFORMATION

5.1 Following the Effective Date, and for such period (but not to exceed six months) as may reasonably be required by West Aquila, West Libra or West Cobalt but to be strictly and solely used for the purpose of any of the DSME Disputes, the Seadrill Group undertakes to provide the relevant owner of a Unit and/or its authorised legal representative with the following, upon the owner's or its legal representative's request:

(a) access to documents in its possession, including correspondence that the Seadrill Group has had during the course of its provision of services which are the subject of the Management Related Claims, concerning the classification society and/or other regulatory bodies and/or DSME relating to any of the Units (save that, if any such documents are reasonably considered to be commercially sensitive for the Seadrill Group or otherwise their disclosure is restricted (including pursuant to data protection laws and regulation and other applicable laws and regulation), no such access shall be provided);

(b) documents in its possession, including correspondence between the Seadrill Group and DSME, which relates to the negotiation and conclusion of the re-sale agreements in respect of the West Aquila and West Libra; and

(c) reasonable support to assist West Aquila, West Libra and/or West Cobalt in defending or asserting its claims in the DSME Disputes provided that:

(i) such reasonable support shall be limited to interviews or enquiries of any member of the Seadrill Group or the employees or directors thereof if and to the extent that such member, employee or director is and remains a member of the Seadrill Group or an employee or director thereof at the time of such interview or such enquiries and to the extent reasonable and to the extent that such person is reasonably expected to have relevant information, in each case, in relation to the DSME Disputes; and

(ii) the relevant entity requesting such support shall on demand immediately reimburse the Seadrill Group for any reasonably incurred and documented costs relating to the provision of such support, to the extent such costs have been pre-approved by the relevant entity requesting such support (and to the extent that such costs have not been pre-approved, the Seadrill Group shall not be required to provide such support).

5.2 The Parties acknowledge that Seadrill has properly provided each of West Aquila, West Cobalt and West Libra with the information they were provided with by DSME.

5.3 Within a reasonable period after the Effective Date, the Seadrill Group shall:

(a) provide to an external law firm nominated by Seadrill ("**Seadrill's Counsel**") all documents identified by searching the Seadrill Group's electronic systems using the following search terms:

(I) “Cobalt”, “*3618” and “Vantage”, the following search period “1 January 2018 to 7 October 2019” and in respect of the following custodians: Jon Olav Osthus, Sudhir Singhal, Scott Crichton, Russell McAdam, David Sims, Andy Westlake, Eric Yip and Leif Nelson; and

(II) "Aquila", "Libra", "*3623" and "*3624", for the search period "1 March 2018 to 1 July 2020", and in respect of the following custodians: Jon Olav Osthus, Sudhir Singhal, Scott Crichton, Russell McAdam, David Sims, Andy Westlake, Eric Yip, Tor Strandhus and Christopher Davies;

(b) procure that, following de-duplication of the documents identified in paragraph (a) above, Seadrill’s Counsel review the remaining documents to identify those relating to the resale contract relevant to the “Cobalt Explorer Unit”; and

(c) procure that, if any documents identified in paragraph (b) above are reasonably believed to be commercially sensitive for the Seadrill Group or otherwise their disclosure is restricted (including pursuant to data protection laws and regulation and other applicable laws and regulation), Seadrill’s Counsel liaise with an external law firm nominated by NODL to agree the redaction or other protection for such documents and, if such protection cannot be agreed, such documents shall be removed from the documents identified at paragraph (b),

such documents identified pursuant to paragraph (b) above (subject to (c) above), being herein the “**Requested Documents**”).

5.4 The Seadrill Group consents to the use of the Requested Documents in relation to the resolution and/or determination of the DSME Disputes, provided that (and conditional upon) no member of the Northern Drilling Group shall, without the consent of the Seadrill Group, take any step to join or otherwise involve any member of the Seadrill Group or any of its Affiliates in any proceeding that forms part of or is related to the DSME Disputes.

5.5 In consideration of the undertakings and consents from the Seadrill Group contained in this Deed, each member of the Northern Drilling Group hereby agrees (on a joint and several basis) to indemnify, shall keep indemnified and shall pay on demand each member of the Seadrill Group and/or its subsidiaries, affiliates, assignees, transferees, principals, officers, directors and employees (each a “**Related Party**”) in respect of:

5.5.1 the reasonable costs and expenses (including the cost of time) incurred by the Seadrill Group and/or its Related Parties to satisfy the Seadrill Group’s obligations pursuant to this Clause 5, including but not limited to the obligations in this Clause 5 to provide support and access to documentation including the Requested Documents, provided that such costs and expenses have been pre-approved by NODL and provided further that:

(a) NODL has pre-approved costs and expenses in an amount of £33,000, to cover:

(I) the searches run to date pursuant to Clause 5.3(a)(I); and

(II) the searches to be run pursuant to Clause 5.3(a)(II) (on the assumption that the scope and scale of such searches is substantially the same as those run to date pursuant to Clause 5.3(a)(I)); and

(b) if NODL has not pre-approved a certain cost and/or expense, notwithstanding any other provision of this Deed, the Seadrill Group shall have no obligation to carry out the obligation giving rise to such cost and/or expense; and

5.5.2 any other documented liability, damages, cost, loss or expense (including, without limitation, reasonable and documented legal fees, costs and expenses) (a "**Loss**") arising out of or in connection with the DSME Disputes, provided that:

(a) the Seadrill Group must take reasonable steps to mitigate such Loss but in no circumstance will any member of the Seadrill Group be required to take any action that it reasonably believes to be against its commercial interests in connection with such mitigation; and

(b) any Loss incurred by any member of the Seadrill Group and their Related Parties as a direct result of any reasonable step taken pursuant to (a) above shall be recoverable pursuant to this Clause 5.5.2.

## 6. COSTS AND EXPENSES

Subject to Clause 5.5, each of the Parties shall bear its own costs and expenses relating to the negotiation, preparation, execution and delivery of this Deed and any other documents as may be required pursuant to its terms.

## 7. CONFIDENTIALITY

### 7.1 Restriction on disclosure of confidential information

Each Party undertakes that all information that may be obtained pursuant to or arising out of this Deed (including information which relates to the provisions of this Deed and the negotiations preceding the execution of this Deed) ("**Confidential Information**") shall not be disclosed, made known, communicated, given or divulged to any person, and shall not be used save for and except:

(a) to a director appointed or an employee employed by it for the purposes of this Deed;

(b) to its professional advisers, auditors and bankers;

(c) in connection with or as required by any financing arrangements of that Party;

(d) in connection with the Chapter 11 cases filed by Seadrill and certain of its subsidiaries in the U.S. Bankruptcy Court for the Southern District of Texas;

(e) to the extent required by Applicable Law;

(f) to the extent required by any securities exchange or regulatory or governmental body to which that Party is subject, wherever situated, whether or not the requirement for information has the force of law;

(g) to the extent that it has come into the public domain through no fault of that Party or (i) in the case of any member of the Seadrill Group, the fault of any other member of the Seadrill Group; or (ii) in the case of any member of the Northern Drilling Group, the fault of any other member of the Northern Drilling Group;

(h) in respect of the Requested Documents, pursuant to Clause 5.4;

(i) to the extent it is ordered by a tribunal or by a court to be disclosed in any then on-going proceedings relating to the DSME Disputes, following DSME having made an application to the tribunal or the court for such disclosure; or

(j) with the prior written consent of the other Parties.

**7.2 Duration of confidentiality obligations**

The obligations contained in this Clause 7 shall continue after the termination of this Deed, without limit in time.

**8. ANNOUNCEMENTS**

Any announcements by a Party in connection with the subject matter of this Deed shall be provided to the other Parties for their review within a reasonable time period before such announcements are published and must not contain Confidential Information (unless one of the exceptions set out in Clause 7.1 applies) and (if practicable and permitted by Applicable Law) the announcing Party shall take into account the other Party's reasonable requests concerning the content of the announcement before it is made.

**9. NOTICES**

**9.1 Method of giving notice**

9.1.1 All notices to be given pursuant to this Deed, subject to Clause 9.2 below, shall be in writing in the English language and sent by letter (whether by a reputable overnight air courier or personal delivery) or e-mail to the following addresses of the Parties, or such addresses as are notified by a Party to the other Parties from time to time:

**Each member of the Seadrill Group:**

Address: Seadrill Limited c/o Seadrill Management Ltd. 2nd Floor, Building 11, Chiswick Business Park, 566 Chiswick High Road

E-mail: grant.creed@seadrill.com

Attention: Grant Creed

**Each member of the Northern Drilling Group:**

Address: Par-la-Ville Place, 14 Par-la-Ville Road, Hamilton HM 08, Bermuda

E-mail: scott.mcreaken@northerndrillingltd.com

Attention: Scott McReaken

**9.2 Deemed delivery**

A notice shall be deemed delivered:

(a) if delivered personally, on the Business Day after the date on which the notice is actually delivered to the address of the Party (and if the notice is not actually delivered on a Business Day or is actually delivered after 17:00 in the time zone of the relevant address, it shall be deemed actually delivered on the next Business Day);

(b) if sent by overseas air courier, on the date falling three Business Days after the date on which the notice is sent (or, if that date is not a Business Day, the next Business Day); and

(c) if sent by e-mail, on the Business Day after the date on which the notice is sent (and if the notice is not sent on a Business Day or is sent after 17:00 in the time zone of the receiving address, it shall be deemed sent on the next Business Day).

**10. VARIATION**

No variation of this Deed shall be effective unless it is in writing and signed by each of the Parties. For the avoidance of doubt, the Conditions Precedent are provided for the benefit of all Parties and may not be waived by a single Party.

**11. ASSIGNMENT**

No Party shall, without the prior written consent of the other Parties:

(a) assign (or declare any trust in favour of a third party over) all or any part of the benefit of, or its rights or benefits under, this Deed; or

(b) novate to any person all or any of its rights and obligations, or otherwise transfer to any person all or any of its rights or obligations under this Deed.

**12. THIRD PARTY RIGHTS**

A person who is not a Party has no right under the Contract (Rights of Third Parties) Act 1999 to enforce or to enjoy the benefit of any term of this Deed, save for Clause 2.2(a) and 2.2(b), which are for the benefit of all persons listed therein and which can be enforced by such persons. Notwithstanding any term of this Deed, the consent of any person who is not a Party is not required to rescind or vary this Deed at any time.

## 13. FURTHER ASSURANCE

Each Party hereby undertakes at its own expense to take all steps necessary on its part to give full effect to the provisions of this Deed including, without limitation, to satisfy the Conditions Precedent applicable to them.

## 14. WAIVERS, RIGHTS AND REMEDIES

14.1 No failure or delay on the part of any person in exercising any right or remedy provided by law or under this Deed shall impair such right or remedy or operate as a waiver or variation of it or preclude its exercise at any subsequent time and no single or partial exercise of any such right or remedy shall preclude or restrict any other or further exercise of it or the exercise of any other right or remedy.

14.2 A waiver by any person of a breach of or default under this Deed shall not constitute a waiver of any other breach or default and shall not affect the other terms of this Deed or the rights of any other person thereto.

14.3 Any waiver (in whole or in part) of any right or remedy under this Deed must be set out in writing, signed by or on behalf of the person granting the waiver and may be given subject to any conditions thought fit by the grantor and, unless otherwise expressly stated, any waiver shall be effective only in the instance and only for the purpose for, and in favour of the person to, which it is given. No waiver will take effect if the person seeking the waiver has failed to disclose to the grantor every material fact or circumstance which (so far as the person seeking the waiver is aware) has a bearing on its subject matter.

14.4 Unless specifically provided otherwise, the rights and remedies of any person under or pursuant to this Deed are cumulative and in addition to, and not exclusive of, any rights, powers and remedies provided by law.

## 15. SEVERABILITY

If at any time any provision of this Deed is or becomes illegal, invalid or unenforceable in any respect under the law of any jurisdiction that shall not affect or impair:

(a) the legality, validity or enforceability in that jurisdiction of any other provision of this Deed; or

(b) the legality, validity or enforceability under the law of any other jurisdiction of that or any other provision of this Deed.

## 16. COUNTERPARTS

This Deed may be executed in any number of counterparts, each of which when executed and delivered shall constitute an original, but all the counterparts shall together constitute one agreement. No counterpart shall be effective until each Party has executed and delivered at least one counterpart.

## 17. EXECUTION AS A DEED

Each of the Parties intends this Deed to be a deed and confirms that it is executed and delivered as a deed, notwithstanding the fact that any one or more of the Parties may only execute it under hand.

## 18. GOVERNING LAW AND JURISDICTION

### 18.1 Governing law

This Deed and any dispute or claim (including non-contractual disputes or claims) arising out of or in connection with it or its subject matter or formation shall be governed by and construed in accordance with English law.

### 18.2 Jurisdiction

The courts of England have exclusive jurisdiction to settle any dispute arising out of or in connection with this Deed or any non-contractual obligations connected with it (including a dispute regarding the existence, validity or termination of this Deed).

The English courts are the most appropriate and convenient courts to settle any such dispute in connection with this Deed. Each Party agrees not to argue to the contrary and waives objection to those courts on the grounds of inconvenient forum or otherwise in relation to proceedings in connection with this Deed.

### 18.3 Service of process

(a) Each of the Northern Drilling Group:

(i) irrevocably appoints Schjødt LLP of 48 Gracechurch Street, London, EC3V 0EJ, United Kingdom as its agent for service of process in relation to any proceedings before the English courts in connection with this Deed; and

(ii) agrees that failure by a process agent to notify it of the process will not invalidate the proceedings concerned.

(b) Each of the Seadrill Group:

(i) irrevocably appoints Seadrill Management Ltd of 2nd Floor, Building 11, Chiswick Business Park, 566 Chiswick High Road, London, W4 5YS, United Kingdom as its agent for service of process in relation to any proceedings before the English courts in connection with this Deed; and

(ii) agrees that failure by a process agent to notify it of the process will not invalidate the proceedings concerned.

(c) If any person appointed as process agent for any of the Northern Drilling Group or the Seadrill Group is unable for any reason to act as agent for service of process, then the relevant member of the Northern Drilling Group or the Seadrill

Group shall within 10 Business Days of such event taking place appoint another agent.

**IN WITNESS** of which this document has been executed as a deed by the Parties and is delivered on the date stated at the beginning of this Deed.

## SCHEDULE 1
## CONDITIONS PRECEDENT

1. Copies of the board resolutions of each Party approving or (as the case may be) ratifying the entry into this Deed.

2. Copies of any power of attorney issued by a Party pursuant to the board resolutions of that Party referred to in paragraph 1 above and under which this Deed is signed.

3. Approval of the terms of this Deed by the United States Bankruptcy Court for the Southern District of Texas, whether pursuant to Federal Rule of Bankruptcy Procedure 9019(a) pursuant to a Motion to Approve Settlement Agreement (the "**9019 Motion**") and one or more orders approving the 9019 Motion and authorising the Parties' entry into this Deed, or otherwise.

Executed as a deed by **Seadrill Limited** acting by Grant Creed ........................................ who, in accordance with the laws of the territory in which Seadrill Limited is incorporated is acting under the authority of **Seadrill Limited**

...............................................................
Authorised signatory

Executed as a deed by **Seadrill Global Services Ltd** acting through **Seadrill Global Services Ltd (DMCC Branch)** by Grant Creed ........................................ who, in accordance with the laws of the territory in which **Seadrill Global Services Ltd (DMCC Branch)** is incorporated is acting under the authority of **Seadrill Global Services Ltd (DMCC Branch)**

...............................................................
Authorised signatory

Executed as a deed by the named person as attorney for **Seadrill Management Limited** in the presence of:

...............................................................
Attorney

Name (print): Grant Creed ..........................................

Witness's signature: KGood ..........................................................

Name (print): Kelly Good ..........................................................

Occupation: Executive Assistant ..........................................................

Address: 24, Quebec Gardens, Surrey GU17 9DE

Executed and delivered as a deed by
**Northern Drilling Ltd.**
acting by
in the presence of:

Authorised Signatory

Name (print): Scott McReaken

Witness's signature:
Name (print): John Thomas Davis
Occupation:
Address:

Executed and delivered as a deed by
**West Aquila Inc.**
acting by
in the presence of:

Authorised Signatory

Name (print): Scott McReaken

Witness's signature:
Name (print): John Thomas Davis
Occupation:
Address:

Executed and delivered as a deed by
**West Cobalt Inc.**
acting by
in the presence of:

Authorised Signatory

Name (print): Scott McReaken

Witness's signature:
Name (print): John Thomas Davis
Occupation:
Address:

Executed and delivered as a deed by
**West Libra Inc.**
acting by
in the presence of:

Authorised Signatory

Name (print): Scott McReaken

Witness's signature:
Name (print): John Thomas Davis
Occupation:
Address: